90 So.2d 508 (1956)
Ray L. CARPENTER, Plaintiff-Appellee,
v.
S. D. MADDEN et al., Defendants-Appellants.
No. 8583.
Court of Appeal of Louisiana, Second Circuit.
October 25, 1956.
Rehearing Denied November 29, 1956.
Writ of Certiorari Denied January 21, 1957.
*510 Julian E. Bailes, Arthur C. Watson, Natchitoches, for appellants.
G. F. Thomas, Jr., John G. Gibbs, Natchitoches, for appellee.
George J. Ginsberg, Alexandria, for United States Casualty Co.
AYRES, Judge.
This action presents a workmen's compensation claim of plaintiff against his employer, Dewitt and Madden, a partnership composed of S. D. Madden and Doyle Dewitt, as well as the individual partners thereof; T. B. Godfrey, allegedly the principal contractor, and the United States Casualty Company, Godfrey's insurer.
There was judgment in favor of plaintiff against the aforesaid partnership and its individual members and Godfrey, in solido, for the maximum statutory allowance in compensation as for permanent and total disability. By an amendment to the judgment Godfrey was held liable in indemnity to Dewitt and Madden to the extent of their liability for compensation to plaintiff. Plaintiff's demands as to the United States Casualty Company were rejected.
From the judgments thus rendered and signed, Madden, Dewitt and Godfrey perfected appeals to this court. Plaintiff neither appealed nor answered the appeals.
The facts established by the record upon which this action is predicated may be briefly stated. Godfrey is and was at the time of plaintiff's accident a procurer of pulpwood for the Brown Paper Mill Company at West Monroe. In the usual course of his business he purchased wood from producers delivered on railroad cars. At other times he purchased timber and caused to be produced therefrom pulpwood through his own employees. In instances he advanced funds to finance the operations of his producers and those from whom he purchased wood. He pro-rated among his producers and vendors quotas for production as had been assigned him by the mill. From the purchase price of the wood severance taxes were deducted and remitted by him or by the mill to the State and premiums on compensation insurance were likewise deducted by him from the price and paid to the insurance company. The record here discloses much the same manner of operations of this defendant as he was shown to have carried on in Cahee v. United States Casualty Co., La. App., 86 So.2d 631. The defendant, S. D. Madden, prior to April of 1955 was a producer of pulpwood which he sold to Godfrey. Doyle Dewitt was an employee of Godfrey.
During the spring of 1955 Godfrey's operations were curtailed due to an increased stock pile of wood on hand at that time, which curtailment affected Dewitt's employment. Whereupon, during April, 1955, Madden and Dewitt obtained loans or advances from Godfrey aggregating $2,000 and engaged upon a partnership venture in the production of pulpwood, which they sold to Godfrey. With a portion of the money obtained from Godfrey they purchased a block or compound of timber from the United States Government in the Kisatchie National Forest. A bank account was opened under the partnership name of Dewitt and Madden, and, in addition to the *511 payment of the purchase price of the aforesaid timber, their employees and other expenses were paid by checks drawn upon said account. Both partners were authorized to and did draw and sign checks on the partnership account. Shipments of wood, however, were made in their individual names rather than under the partnership name for the reason their production quota was greater, being for two producers instead of only one.
On July 1, 1955, Dewitt resumed his former full-time employment with Godfrey. The partnership in the meantime continued in its operations. It was never dissolved nor liquidated. The bank account was continued as a partnership account. The timber operations were continued to be pursued. Even at the time of trial, a portion of the timber purchased remained standing. After Dewitt's re-employment as aforesaid, he inspected on at least two occasions the timber operations being carried on as a partnership venture.
Dewitt claims that the partnership was dissolved about July 1, 1955, or shortly thereafter. His contention in this respect, however, is not supported by the facts established in the record and as detailed hereinabove. That they may have checked on their operations and determined that their venture had not been such a success as anticipated is not sufficient to indicate a dissolution of the partnership in view of the continuance of the relationship in the manner as aforesaid.
It was during plaintiff's employment in cutting, hauling and loading pulpwood from the aforesaid tract as had been purchased by Dewitt and Madden from the Government that he sustained accidental injuries August 8, 1955.
The first proposition to be considered is the question of plaintiff's accidental injuries and his disability resulting therefrom. While loading a stick of pulpwood 10 to 12" in diameter and 5', 3" long, having an estimated weight of 150 to 160 pounds, plaintiff slipped as he stepped in quicksand and fell, causing a wrench, twist and sprain of his lower back and injuries to his chest. Report of this accident was made to his employer the following day and three days later he was examined and treated by his family physician.
On October 29, 1955, plaintiff was examined by Dr. W. H. Pierson, who found tenderness in his chest in the area of the junction of the fifth rib with the chest bone, as well as tenderness in the lower back, in the right hip and down the right leg, with a disturbance of sensation in that area. There were also muscle spasms in the area of the lower back. Plaintiff's complaints and the findings of Dr. Pierson suggested to him that plaintiff had possibly suffered a herniated intervertebral disc. In the Doctor's opinion, plaintiff was disabled from the performance of heavy manual labor such as he was doing at the time he was injured.
Dr. Pierson referred plaintiff to Dr. H. K. Faludi, a neurosurgeon in Shreveport. Dr. Faludi examined plaintiff January 10, 1956, when he observed that plaintiff walked with a decided bent and was titled to the right, affecting his right leg in walking. The examination revealed there was a slight scoliosis or curvature of the spine to the right and tenderness in the lumbosacral region and over the right sacro-iliac joint, extending down towards the right flank. Raising the right leg produced a sciatic pain indicative of sciatic nerve irritation. The curvature of the spine was attributed to muscle spasm. It was the Doctor's opinion that plaintiff most likely had a potentially unstable back, which was aggravated at the time of the accident by the lumbosacral sprain. His findings suggested the possibility of a herniated disc, the presence of which could not be accurately determined except through a myelogram. Such a test, however, was said not to be accurate in all cases. Nevertheless, it was the Doctor's predominant impression that plaintiff was suffering from a lumbosacral sprain, even though there existed the possibility of a herniated disc. Based upon the results of *512 his examination, Dr. Pierson was of the opinion plaintiff was unable to perform manual labor.
Dr. T. E. Banks of Alexandria examined plaintiff on behalf of the defendants. The Doctor stated:
"It was my impression that man had enough findings to make a diagnosis of residual low back injury. I felt that he was to some degree over exaggerating his complaints but he had certain objective findings which I felt indicated that he did have some residual disability at the time.
* * * * * *
"* * * the objective findings of further improper back function would make me feel that he did have something wrong, the exact nature of which I could not say and that is why I made the recommendation that I did."
The recommendation he referred to is the myelogram test suggested as an aid in a more accurate diagnosis of plaintiff's condition, especially as to the possibility of a herniated disc.
The lay testimony is to the effect that plaintiff is not able to do and has not engaged in any active work since the date of his accident. The record, in our opinion, adequately establishes plaintiff's impairment, rendering him unable to continue the performance of manual labor of the kind and character he was performing at the time he was injured. The trial court found plaintiff entitled to compensation as for total and permanent disability. The record amply supports the conclusions reached.
The question, however, is from whom is plaintiff to claim this compensation? The partnership of Dewitt and Madden and its individual partners, as plaintiff's employers, are obviously liable.
The next question concerns the liability of Godfrey. The evidence establishes, without serious contention to the contrary, that the relationship between Dewitt and Madden and Godfrey was that of vendor and vendee of the pulpwood produced by them through Carpenter, their employee. Under a similar situation, a vendee was held not liable to an injured employee of the vendor for compensation. Smith v. Crossett Lumber Co., La.App., 72 So.2d 895. Therefore, Godfrey, as the purchaser of the pulpwood from Dewitt and Madden, is not liable for compensation to plaintiff, an employee of that partnership, for injuries sustained by him while engaged in such employment. An insurer, which has issued a workmen's compensation insurance policy, is only liable when the insured is liable. Godfrey was the insured in the policy issued by the United States Casualty Company. Since Godfrey as the purchaser of the wood is not liable for compensation, neither is the insurer. Smith v. Crossett Lumber Co., supra; Benjamin v. Standard Accident Ins. Co. of Detroit (In re Benjamin), 152 La. 874, 94 So. 428, 429; Rutland v. General Accident Fire & Life Assur. Corporation, Limited, of Perth, Scotland, La.App., 200 So. 486; Fields v. General Casualty Co. of America, 216 La. 940, 45 So.2d 85; Prater v. Sun Indemnity Co. of New York, La.App., 38 So.2d 663.
Plaintiff's plea of estoppel, based upon the fact that Dewitt and Madden paid insurance premiums for workmen's compensation at the rate of 50 cents a cord upon the wood produced and sold by them to Godfrey, which premiums were in turn paid to the United States Casualty Company, is without merit. Such was held in Smith v. Crossett Lumber Co., supra. See also Franz v. Sun Indemnity Co. of New York, La.App., 7 So.2d 636, 638-639, and the cases therein cited; Kline v. Dawson Lumber Co., La., 89 So.2d 385, 390.
There was no privity of contract between Godfrey or his insurer and plaintiff. Neither Godfrey nor the insurer made any agreement with or represented to plaintiff that insurance was carried for his benefit.
*513 The plea of estoppel, however, filed on behalf of Dewitt and Madden and the individual members of that partnership, presents a more serious question, particularly as concerns Godfrey. The evidence establishes, and Godfrey admits, that he represented to Madden and Dewitt that he was carrying insurance that protected them against workmen's compensation claims of their employees in their operations wherein they were procuring and selling pulpwood to him; that Godfrey would carry this insurance was a part of the agreement between them and Godfrey. For instance, a representative excerpt from Godfrey's testimony is as follows:
"Q. Now, you know that in the production of that wood that Mr. Madden is going out and employ people to go in there and cut it, load it and haul it and put it on the car, don't you? A. That's correct.
"Q. Now, what is the agreement between Madden and yourself as to the Workmen's compensation liability coverage that he has with regard to his employees? A. When Mr. Madden started to work for me I told him that I had Workman's Compensation Insurance coverage which would cover him. That was my opinion.
"Q. What did you tell him insofar as that was concerned? Did you tell him that every man that handles this pulpwood is protected under the workman's compensation policy? A. I could have very well said that. I think I have said that on many occasions.
"Q. Well, your agreement with him was that you were to hold him harmless from any claims under the compensation statutes insofar as producing pulpwood for you was concerned? A. I don't think that I ever told him that I would personally hold him harmless. I have never considered myself as being responsible for it but I bought this insurance with the thought in mind of protecting everyone down the line, that's true.
"Q. Well, whether or not it had that effect, your agreement and your responsibility to Mr. Madden under your agreement was that I'll see that we are covered by compensation coverage or that you and the people that work under you are covered by compensation? A. I told him that I carried compensation and that I paid the premiums which I would deduct from his pay up until July 1st and I did exactly what I said I'd do.
"Q. Well, you represented to him that when he went into the business for you that you had the coverage that would protect him from liability under the statutes? A. That was my idea.
"Q. That's what he was interested in, was it not? A. I was conveying him my understanding of the compensation policy. I thought that and I conveyed the same thought to him.
"Q. So, insofar as Mr. Madden or Mr. Dewitt was concerned relying on your representation there was no need for them to secure compensation insurance for themselves? A. That's correct.
"Q. Because they were paying you for it? A. That's right.
"Q. And you in turn were paying someone else for it? A. Yes, sir.
"Q. Now, you say that continued up until the first of July? A. That's right.
"Q. Now, what happened on that date? A. I quit puttingI made a change in my paying system and I did not after that date show any deductions for insurance from Mr. Madden's statement or from any monies that were due him at all.
"Q. But he continued to get the same net price for his wood and you *514 continued to make the same payments on this Workmen's Compensation Insurance policy that you hadthat you made previous to that time? A. That's correct.
"Q. No change in that? A. Other than it could have been a cent or two involved but basically you are right. I continued to carry the same policy that I had prior to July 1st, 1955.
"Q. And based on the same premium? A. That's right.
"Q. And in effect paid Mr. Madden sixty-five cents less for his wood which excluded severance tax and insurance? A. Something along that line. I wouldn't say that it was exactly sixty-five cents."
Dewitt and Madden paid Godfrey out of the purchase price of the wood sold by them to him the sum of 50 cents per cord in payment of the premiums on the insurance which was represented by Godfrey to cover their activities. This payment and deduction from the price of the wood was shown upon the returns made for each car shipped and sold prior to July 1, 1955, after which a change in bookkeeping was effected so as not to show such deduction or its disposition, although the same deduction was continued to be made from the price of the wood. That Godfrey did not obtain the insurance that he represented he obtained is evident from the policy introduced in evidence insuring him and him alone. Relying upon these representations and agreement that Godfrey either had or would obtain insurance insuring defendants Madden and Dewitt, they have been prejudiced by his failure in that respect. They were led to believe they were secure so far as any compensation claims might arise. It was not until after the accident occurred for which they became liable for workmen's compensation they were informed that the insurance did not cover them. While it is recognized that estoppels are not favored in law, in clear cases estoppels should be applied. The situation here presents a clear case where the plea should be sustained.
Taylor v. Turner, La.App., 45 So.2d 107, 110, states:
"The rule is almost, if not invariable that to sustain a plea of estoppel two essential facts must be well established, viz.:
"1. The party against whom the plea is leveled must have knowingly, orally or in writing, asserted as true, facts that were not true, and
"2. The proponent of the plea must have had knowledge of said assertions and, in good faith, acted thereupon and/or changed his position with respect to the matter involved, to his loss, injury or detriment."
These two requirements are met here. As a general rule, where a person has, with knowledge of the facts, acted or conducted himself in a particular manner or asserted a particular claim, title or right, he can not afterward assume a position inconsistent therewith to the prejudice of one who has acted in reliance on such conduct. However, to constitute an estoppel, the party against whom an estoppel is claimed must have done some act or pursued some course of conduct with knowledge of the facts and of his rights, and, in addition, it is essential that the party claiming the estoppel should have been misled to his prejudice. As stated aforesaid, Godfrey represented, pursuant to an agreement with Dewitt and Madden, that he was carrying insurance protecting them under the Workmen's Compensation Act, LSA-R.S. 23:1021 et seq.; he accepted premiums from them to pay upon a policy of such insurance. He admits these facts. It is too late for his position to be altered after an accident has occurred and they have been sued for compensation benefits. Godfrey is under a like obligation to Dewitt and Madden as they are unto the plaintiff, and they should have judgment accordingly.
*515 But Dewitt and Madden's plea of estoppel against the United States Casualty Company, Godfrey's insurance carrier, is without merit. There was no representation or agreement between them and the Casualty Company. The only agreement or representation it made, as is shown by the record, is the policy issued to and covering only the compensation liability of T. B. Godfrey. Neither did Dewitt and Madden pay premiums to the United States Casualty Company. Their payments of premium were made to Godfrey, rather, the payments were deducted by Godfrey from the purchase price of the wood sold by them to Godfrey and which, in the absence of such deduction, would have been paid to them as a part of the purchase price of the wood. Godfrey paid the premiums on his insurance coverage purporting to cover all his operations. To the extent that Dewitt and Madden's plea is directed to the United States Casualty Company, it was properly overruled. Its liability for compensation is governed by the terms of its contract with its insured, T. B. Godfrey. This contract has the effect of law between the parties so far as insurance liability is concerned.
There was no plea of estoppel filed by Godfrey as against the United States Casualty Company nor was there any claim made by him upon it for indemnity for any sum for which he might be held liable. That question is a matter between them and them alone, which could only be adjudicated when properly presented, which, however, has not been made an issue between them in the instant case.
For the reasons herein assigned, the judgment appealed is amended and recast to read as follows:
It is, therefore, ordered, adjudged and decreed there be judgment herein in favor of plaintiff, Ray L. Carpenter, against the defendants, Dewitt and Madden, and Doyle Dewitt and S. D. Madden, individual members of said partnership, in solido, for the full sum and weekly compensation of $30 per week beginning August 8, 1955, together with five percent per annum interest on each of said weekly installments from its maturity until paid, during plaintiff's period of disability, however, not to exceed 400 weeks, and for the further and other sum of $72 for medical expenses and all costs of this suit, including the expert witness fees of Dr. W. H. Pierson, Dr. H. K. Faludi and Dr. T. E. Banks, which are hereby fixed in the sum of $50 each and taxed as costs herein.
It is further ordered, adjudged and decreed that the plea of estoppel filed and urged by the partnership of Dewitt and Madden and Doyle Dewitt and S. D. Madden as the individual partners thereof as against T. B. Godfrey be and the same is hereby sustained, and that, accordingly, there is judgment herein in their favor and against the defendant, T. B. Godfrey, for the full sum of $30 per week, beginning August 8, 1955, with five percent per annum interest on each of said weekly installments from its maturity until paid, during the disability of the plaintiff, Ray L. Carpenter, not, however, exceeding 400 weeks, together with the additional sum of $72 for medical expenses, and for all costs, including the cost of this appeal and the expert witness fees as hereinabove fixed.
It is further ordered, adjudged and decreed that the fee of plaintiff's attorneys, John G. Gibbs and Gerard F. Thomas, Jr., be and it is hereby fixed at 20 percent of the amount to be recovered pursuant to this judgment, not, however, to exceed a total of $1,000.
The plea of estoppel of Dewitt and Madden, so far as concerns the United States Casualty Company, is overruled and the demands of Dewitt and Madden, a partnership, and the individual members thereof as against the United States Casualty Company be and the same are hereby rejected.
Amended and affirmed.