ELLIS, Judge.
This is a suit on open account for work done and parts furnished by the plaintiff. From a judgment in favor of plaintiff as prayed for, the defendant has appealed.
The petition of Southwest Machine Shop, Inc. alleges it is due the sum of $251.45 on open account from Delta Equipment & Construction Company, Inc. The affidavit of the account and the itemized statement show the charges are based upon repairs and parts made and furnished on a certain Jeep and lawn mowers. An exception of no cause of action was filed on behalf of the defendant, but this exception by agreement of counsel, was referred to the merits, overruled in the judgment and is not re-urged here. An answer was made which merely denies all of the allegations of plaintiff’s petition.
The defense to this action is that the Jeep and the lawn mowers in question did not belong to Delta Equipment & Construction Co., Inc. but rather to A. A. Lindley, President of this Corporation. The defendant Corporation maintains the suit should have been directed against Lindley individually. The plaintiff contends that its objection to the introduction of any evidence by the defendant on the question of ownership was good and he reurges the same objection since such evidence was permitted subject to the objection; that even if the evidence of ownership be admitted, the doctrine of equitable estoppel should be applied and plaintiff allowed recovery.
The defendant Corporation had done business with the plaintiff for a period of four or five years prior to the work which gave rise to this suit. During the entire period all of the work done by plaintiff was done upon the request of Lindley himself, or by agents or employees of the defendant Corporation. All prior charges so incurred were paid by the defendant Corporation. Lindley’s testimony shows that all previous items repaired were authorized by him and that the question of ownership was never discussed. The bills were always sent to Delta Equipment & Construction Co., Inc. and were paid by this Corporation. He acknowledged he authorized the work done on the items, that the repairs were done with his knowledge, consent and approval and that a bill was made out covering the account to the defendant Corporation. Further, he admitted receiving a bill so made out, and there was introduced in evidence a letter dated June 24, 1954 on a Delta Equipment & Construction Co., Inc. letter-head, signed by Delta Equipment & Construction Co., A. A. Lindley, Pres. This letter is as follows:
*460 “Dear Sir:
“Re— your letter dated June 22nd., 1954 regards to a claim made by Mr.
J. H..Walsh or Southwest Motor Machine Shop, we do not deny our indebtedness to the Southwest Motors, however I have some I. O. U.’s that Mr. Walsh signed for cash I advanced him that has not been paid.
“I am willing to make satisfactory arrangements for settlement any time you can get Mr. Walsh to meet with me and offset the money he owes me by way of compromise. If you wish to see his signature on the I. O. U’s I will be glad to show them any time, Mrs. Walsh informed me not to pay Mr. Walsh until he paid me.
“The work that Southwest Motors done for us went bad and we have the work he did at our shop for proof. We have made several demands on Mr. Walsh as yet he has not paid but has promised to pay.
“Yours very truly,
“Delta Equipment & Const. Co.
“s/ A. A. Lindley
“A. A. Lindley Pres.”
According to Lindley’s own testimony the question was never raised as to whether the Corporation or he, individually, owed the indebtedness until after the suit was filed. His evidence upon this point is:
“Q. Let me ask 3'ou this, did you ever tell either Mr. Walsh or Mrs. Walsh that that bill should have been to you personally and not to the Delta Equipment & Construction Company?
“A. Well, that question was never brought up.
“Q. You never did advise them that it should have been billed to you?
“A. No, I never did advise them. The only thinfe I told them was that they owed me about three times as much as I owed them. Mrs. Walsh told me not to pay him until he paid me.”
It seems, upon the basis of previous representations, considering the business relationship which had existed for several years, and particularly the letter in question, the defendant is successfully met with the plea of estoppel. While such a plea is not favored in law, yet, in clear cases es-toppel should be applied.
In Carpenter v. Madden, La.App., 90 So. 2d 508, where estoppel was applied, at page 514, we find the following:
“ * * * As a general rule, where a person has, with knowledge of the facts, acting or conducting himself in a particular manner or asserting a particular claim, title or right, he cannot afterward assume a position inconsistent therewith to the prejudice of one who has acted in reliance on such conduct. However, to constitute an estop-pel, the party against whom an estoppel is claimed must have done some act or pursued some course of conduct with knowledge of the facts and of his rights, and, in addition, it is essential that the party claiming the estoppel should have been misled to his prejudice. * * * ”
It is true that to support the plea the party urging must have had knowledge of the conduct of the other and have acted in good faith. This seems to be the case here as all of the bills sent by the plaintiff were directed against the defendant Corporation, including this last bill, which was for repairs and parts on the items now contended to have belonged individually to the President of the Corporation. Under the general rule, quoted above, the urging now of the question of ownership is certainly inconsistent with the former conduct of the business relations between the plaintiff and the defendant Corporation and the plaintiff was misled as it never did send a bill personally to Lindley. The evidence indicated the Jeep and lawn mowers were the personal property of Lindley and did not belong to the defendant Corporation. The case of Cothran v. Ideal Savings *461 & Homestead Ass’n, La.App., 21 So.2d 233, 234, is apposite. There the president of a homestead association entered into a contract with a building contractor. The plaintiff assumed he was acting for and on behalf of the association and when his services were not paid for the association was sued. The defendant contended it was not liable because it did not own the property upon which the services were rendered and because the president had no authority to authorize the work. Even though the president was not authorized and the association did not own the property in question, still the Court gave judgment for the plaintiff. In its opinion the Court quoted from American Jurisprudence Vol. 13, Subject “Corporations”, Article 890, which reads:
“Apparent or Ostensible Authority; Authority by Estoppel. It is a fundamental and well-settled rule that when, in the usual course of the business of a corporation, an officer or other agent is held out by the corporation or has been permitted to act for it or manage its affairs in such a way as to justify third persons who deal with him in inferring or assuming that he is doing an act or making a contract within the scope of his authority, the corporation is bound thereby, even though such officer or agent has not the actual authority from the corporation to do such an act or make such a contract. This authority is known as apparent or ostensible authority. This apparent authority is materially the same and is based upon the same principles as authority by estoppel. Stating the rule in terms of estoppel, a corporation which, by its voluntary act, places an officer or agent in such a position or situation that persons of ordinary prudence, conversant with business usages and the nature of the particular business, are justified in assuming that he has authority to perform the act in question and deal with him upon that assumption is estopped as against such persons from denying the officer’s or agent’s authority.”
The court went on to say this rule is well-settled in Louisiana Jurisprudence, quoting authorities.
Admitting the items upon which the repairs and parts were furnished belonged to Lindley personally, the mode of conduct of Lindley over a long period when doing business with the plaintiff, constitutes a set of facts which led the plaintiff to believe all of the work it did at the direction of Lindley and/or his agents and employees was done for the defendant Corporation. Add to this the letter signed by Lindley as the President of the Corporation, wherein the indebtedness was admitted upon the part of the Corporation by using the word “we” instead of “I”, with no further explanation, and a clear case of estoppel is presented. The defendant urges this letter cannot support the plea of estoppel since the plaintiff did not rely upon it when doing the work as it was not written until months after the work was done. It maintains the letter could not be a ratification. We do not consider the letter as any ratification, but rather corroborative evidence of the usual continuous basis upon which plaintiff and defendant did business. The letter does speak of some indebtedness, but off-set was not plead, the only defense offered being the question of ownership.
The requisites to sustain a plea of estoppel are stated in Taylor v. Turner, La.App., 45 So.2d 107, and were again set forth in Carpenter v. Madden, supra, 90 So.2d 508. Aside from the general rule stated hereinabove, that a mode, of conduct, with knowledge of the facts, must be acted out by the person against whom the plea is leveled, there must also be another requisite. The second is that the party so pleading must have had knowledge of the position assumed, and must, in good faith, act thereon to his loss, injury or detriment. The actions, representations and relationships over á long period *462 lead the plaintiff to believe the indebtedness sued upon was due by the defendant Corporation. That the plaintiff relied upon the belief the work was done for the Corporation is evidenced by the present suit. The record discloses that Lindley was well able to stand in judgment in a suit brought against him personally, and there is nothing in the record to prove the plaintiff would not have sued Lindley individually had it known the work was done for him in that capacity.
The issues here are factual and the testimony of the plaintiff and defendant at times in conflict. In such cases great weight is to be given the findings of the trial Court. These findings should not be reversed unless clearly erroneous. We find no manifest error.
The judgment of the lower Court is affirmed.