**T. Brewer GODFREY**

v.

**UNITED STATES CASUALTY COMPANY.**

**Civ. A. No. 6046.**

United States District Court
W. D. Louisiana,
Monroe Division.

Nov. 21, 1958.

George M. Snellings, Jr., McHenry, Lamkin, Snellings & Breard, Monroe, La., for plaintiff.

George J. Ginsberg, Alexandria, La., for defendant.

BENJAMIN C. DAWKINS, Jr., Chief Judge.

This cause having been tried and submitted by agreement on the record, including all pleadings, exhibits, depositions, stipulations and offerings by counsel; having been fully briefed and argued on the merits; and the Court, being fully advised in the premises, having concluded that there should be judgment as prayed in favor of the plaintiff and against the defendant, in conformity with the Court's Ruling on Merits entered herein October 7, 1958; the Court hereby makes and enters its findings of fact and conclusions of law:

### Findings of Fact

1. Plaintiff, T. Brewer Godfrey, is a resident citizen of the State of Louisiana.

Defendant, United States Casualty Company, is a corporate citizen domiciled in the State of New York.

2. Plaintiff's action is for the recovery of loss, expense and damage substantially in excess of $3,000, exclusive of interest and costs.

3. During all times relevant to this suit (1954–1958), plaintiff was engaged in logging, lumbering and pulpwood operations in northeast and north-central Louisiana, as a general supplier of pulpwood to the paper industry in North Louisiana. Especially was plaintiff so engaged in the Parish of Natchitoches, Louisiana, within this Judicial District of Louisiana, throughout the year 1955.

4. On January 16, 1955, defendant issued to plaintiff its Workmen's Compensation Insurance Policy No. WC–226299, in which plaintiff, T. B. Godfrey, was named as the insured. The policy was issued through A. E. Montgomery Insurance Agency, of Monroe, Louisiana, which was an authorized agency of defendant.

5. Plaintiff's pulpwood operations were extensive in area and volume, and diversified in legal relationships. Plaintiff procured pulpwood, which he sold to Brown Paper Mill, in West Monroe, Louisiana, by three principal methods: (1) some he caused to be cut in the woods, hauled and loaded or stacked by independent contractors; (2) some he purchased as buyer from independent sellers who had cut and hauled it from the woods; (3) occasionally he had pulpwood cut and hauled by direct employees. In some instances he would purchase from independent sellers, and hauled or loaded by direct employees. At the time the policy was issued he had only one direct, full-time employee on his payroll.

6. It was plaintiff's purpose, in purchasing defendant's policy, to insure the compensable claims of all injured woodsmen or laborers handling the pulpwood, regardless of variable and unpredictable legal relationships, whether they were in fact or law his employees, or the employees of independent contractors, or the employees of vendors. This intention

was well known to Montgomery Insurance Agency, who represented to Godfrey that defendant's policy afforded that scope of coverage; and, in reliance on that representation, the policy was purchased.

7. Two additional facts corroborate the last stated finding:

(a) Although premiums for workmen's compensation insurance in Louisiana are normally computed by a formula based on numbers of employees and dollar amount of payroll, in this case premiums were measured and charged according to the number of units (cords) of pulpwood handled by plaintiff during the policy period, regardless of source or method of supply and production; i. e., whether he produced the pulpwood by the labor of woodsmen directly employed by him, or caused it to be produced by independent contractors, or purchased it from independent sellers. Using this formula, which was unique to this business, and having only one direct employee during the policy period, Godfrey paid defendant $10,771.17 in premiums for the effective period of the policy, January 16, 1955, to August 15, 1955.

(b) Custom and usage in the pulpwood industry and in the field of insurance covering that industry against compensation claims, show that premiums are computed in this manner, and claims of injured woodsmen are paid, regardless of their legal relationship to the ultimate pulpwood supplier who is named as an insured in such policies. Both plaintiff and defendant were familiar with this custom and usage. Previous policies held by plaintiff in other companies had been issued on this basis, and claims were honored in conformity with this usage of the industry. The policy in this case was issued to afford coverage consistent with such custom and usage.

8. On August 8, 1955, Ray L. Carpenter, a woodsman, sustained accidental injury in the course of his employment within the geographical area covered by the policy. Carpenter was the direct employee of Madden and Dewitt, a partnership composed of S. D. Madden and Doyle Dewitt. Madden and Dewitt were cutting pulpwood for Godfrey and supplying it to Godfrey; and Carpenter was employed in the production of that pulpwood when injured.

9. On November 15, 1955, Carpenter sued for workmen's compensation, in the Tenth District Court for the Parish of Natchitoches, Louisiana. He sued Madden and Dewitt as his immediate employers, and as subcontractors or independent contractors under Godfrey. He also sued Godfrey, as principal contractor, and United States Casualty Company as compensation insurer of all other defendants. Madden and Dewitt answered the suit on its merits and also impleaded Godfrey, as third party defendant, by calls in warranty, praying for judgment against Godfrey in the event of judgment adverse to them, on the ground that Godfrey had represented to them that they were insured under defendant's policy, had charged them a specified amount per cord to pay for such insurance, and was estopped to deny coverage and protection to them.

10. Godfrey promptly transmitted all pleadings and demands to United States Casualty Company; and called upon defendant to protect him fully on all claims and demands asserted in that suit, specifying that he called upon defendant to defend and protect him both on Carpenter's primary demand for compensation, and on the call in warranty, or demand over against him, asserted by Madden and Dewitt.

11. Defendant acknowledged receipt of all pleadings and advised Godfrey that it would notify him should any question arise. Defendant employed counsel, who appeared for and represented both Godfrey and defendant in that litigation. Defendant controlled that litigation in its entirety; raised no question as to its responsibility to protect Godfrey both on the primary demand and on the demand of Madden and Dewitt; and at no time prior to judgment elected in any way to deny coverage responsibility.

12. While the Carpenter suit was pending, and with full knowledge of the issues therein, defendant audited plain-

tiff's records; and, with the approval of its Claims Department, billed Godfrey for a premium assessment of $5,516.36 on the policy, computed on the basis of the number of units of wood handled (including that supplied by Madden and Dewitt) regardless of the legal relationships between Godfrey and the various primary producers and suppliers of the wood to Godfrey. This assessment was promptly paid by Godfrey.

13. In February of 1956, the Carpenter suit was tried in the State Court. Madden and Dewitt, through independent counsel, resisted his demands, and asserted their own demands against Godfrey and United States Casualty Company. The latter, for itself and Godfrey, through common counsel employed and furnished by it, resisted all demands. The entire record in that suit was offered in evidence in this case. Examination of that record makes it plain that there was a sharp conflict of interest throughout the trial between Godfrey and United States Casualty Company. Counsel for Godfrey, acting as counsel for his insurer, excluded on objection all evidence that would have tended to explain the intent and scope of coverage, and the custom and usage of the business, and that would have afforded protection to Godfrey on the demands of Madden and Dewitt. Yet no election to withdraw, or to restrict or deny coverage, ever was expressed by defendant to Godfrey; nor was any reservation of rights asserted by it.

14. On June 19, 1956, the Tenth District Court of Louisiana rendered judgment in favor of Carpenter against Madden and Dewitt, and in favor of the latter against Godfrey, for compensation as of total permanent disability, not to exceed 400 weeks; which judgment, as amended when signed, provided that, as between Madden and Dewitt and Godfrey, the latter was primarily indebted to the partnership by reason of his representations and assurances that they were covered by compensation insurance. Godfrey immediately notified defendant that he expected full protection on that judgment.

On June 28, 1956, for the first time, Godfrey was notified by defendant that it would neither protect nor represent him with reference to that judgment (no judgment having been rendered against United States Casualty Company in the District Court), and that he should take such action as he saw fit. At that time Godfrey's opportunity to apply for a new trial or rehearing had been forfeited by the lapse of legal delays, a loss materially prejudicial to his interests; and the date of such notice was the last day on which a suspensive appeal could be taken. Throughout that litigation Godfrey had cooperated with the insurer in every possible way.

15. Godfrey was compelled immediately to employ independent counsel, who perfected a suspensive appeal in his behalf to the Court of Appeal for the Second Circuit of Louisiana. At the same time defendant promptly was put on notice that it would be held responsible for all loss, damage, cost, expense and attorney's fees. Godfrey's counsel immediately engaged in preparation of the case for further proceedings on the appeal, studying and reviewing the facts, the record, and applicable law.

16. About August 29, 1956, defendant, having reconsidered its position at the suggestion of its counsel, resumed its legal representation of Godfrey and protection of his interests in the case. Because of this, Godfrey thereupon surrendered control of his appeal to defendant. Release of the case to defendant, and the latter's resumption of representation of Godfrey, and control of the litigation, were based on the clear, unambiguous understanding and agreement between Godfrey and defendant that it would fully protect him on any judgment which ultimately might be rendered. Defendant's commitment in that respect was unrestricted, and was undertaken with full knowledge that the only judgment against Godfrey was not for compensation, as a direct liability, but was a judgment in favor of Madden and Dewitt based upon Godfrey's assurances of insurance coverage.

17. Through its counsel, defendant submitted separate briefs in its own behalf and in behalf of Godfrey to the Court of Appeal; and in the brief which it filed, purportedly in behalf of Godfrey, and without his knowledge or consent, substantially confessed Godfrey's liability to Madden and Dewitt in a statement of position clearly prejudicial to Godfrey.

18. The Louisiana Court of Appeal for the Second Circuit, on October 25, 1956, affirmed Carpenter's judgment for compensation against Madden and Dewitt; and (recasting it for clarity) affirmed the judgment against Godfrey in equal amount, on the basis of estoppel to contradict his assurances of insurance coverage to Madden and Dewitt. The Court of Appeal expressly noted that there had been no assertion of right or claim by Godfrey against United States Casualty Company in that litigation. Carpenter v. Madden, La.App., 90 So.2d 508, at page 515.[1] Rehearing and writs of review, sought by Godfrey through representation supplied him by defendant, having been refused, the judgment became final and executory on January 21, 1957.

19. Godfrey immediately called upon defendant to satisfy the judgment against him, whereupon defendant again wholly abandoned him and refused to protect him in any way upon the judgment. Writ of execution issued against Godfrey, pursuant to which he was compelled to pay all amounts subsequently accruing.

20. Having re-engaged independent counsel, Godfrey then instituted this suit against United States Casualty Company to recover all loss, damage, cost, expense and attorney's fees suffered and sustained by him as a result of defendant's acts and omissions to act in the circumstances detailed in the foregoing findings of fact. The Court finds to be proven these items of loss, damage, cost, expense and attorney's fees, which plaintiff is entitled to recover from defendant:

(a) The sum of Three Thousand Four Hundred Six and 16/100 Dollars ($3,-406.16), with five per cent (5%) interest from February 19, 1957, until paid, being compensation paid prior to the filing of this suit;

(b) The sum of Thirty and No/100 Dollars ($30.00) per week, weekly from February 13, 1957, plus five per cent (5%) interest on each weekly installment from due date until paid, not to exceed a total of 400 weeks, after August 8, 1955, so long as said weekly sum has been paid or shall be paid by plaintiff under the judgment in the Carpenter case;

(c) The sum of One Hundred Fifty and 52/100 Dollars ($150.52) for reimbursement of costs and expenses, as itemized, plus five per cent (5%) interest from judicial demand herein until paid;

(d) The sum of Twenty-five Hundred and No/100 Dollars ($2,500.00), being attorney's fees incurred by plaintiff, which he is obligated to pay as the result of defendant's default on its obligations, with five per cent (5%) interest from judicial demand herein until paid;

(e) The sum of One Thousand and No/100 Dollars ($1,000.00) for future costs, expenses and fees which plaintiff is obligated to pay in connection with this suit, with five per cent (5%) interest from judicial demand herein until paid; subject to remission of this amount by plaintiff to defendant in the event no appeal is taken by defendant in this case;

(f) All costs of this suit.

## Conclusions of Law

1. This Court's jurisdiction is based upon diversity of citizenship between the

---

1. "There was no plea of estoppel filed by Godfrey as against the United States Casualty Company nor was there any claim made by him upon it for indemnity for any sum for which he might be held liable. That question is a matter between them and them alone, which could only be adjudicated when properly presented, which, however, has not been made an issue between them in the instant case."

parties, and requisite jurisdictional amount. 28 U.S.C. § 1332.

▮ 2. The defense to this action is based on the narrow proposition that, by its policy, defendant insured merely the personal liability of Godfrey alone, as named insured, for workmen's compensation to an injured employee; that the judgment against Godfrey is not for workmen's compensation, but for a liability to Madden and Dewitt predicated upon representations by Godfrey as to insurance coverage; that the Court is limited in its consideration to the exact words of the written policy contract itself, and may not consider any of the parol or extrinsic evidence offered by plaintiff. Defendant's contention is without merit; and the Court is entitled to consider, and has considered, all of the evidence adduced by plaintiff, which abundantly supports the findings of fact. The extrinsic parol evidence tendered in this case is admissible upon any one or all of several well established legal principles:

▮ (a) Parol or extrinsic evidence is always admissible to aid in the interpretation of a written contract; to determine the intent of the parties as to its operation and performance; and to show the manner in which it has been acted upon, and thus interpreted, by the parties, or by one with the express or implied assent of the other. LSA–Civil Code, Arts. 1950, 1956. Rosenthal v. Gauthier, 224 La. 341, 69 So.2d 367. Wigmore on Evidence, Vol. IX, Sec. 2470, p. 227.

▮ (b) A written instrument, and especially an insurance contract, properly may be construed according to established custom and usage in the business; and such custom and usage may be proven by parol or extrinsic evidence. Standard Oil Co. of New Jersey v. United States, 340 U.S. 54, 71 S.Ct. 135, 95 L.Ed. 68; United Carbon Co. v. Monroe, D.C., 92 F.Supp. 460, affirmed 5 Cir., 196 F.2d 455; Bramstein & Bender v. Crescent Mutual Insurance Co., 24 La.Ann. 589;

Pino v. Merchants' Mutual Insurance Co., 19 La.Ann. 214; Hirsch v. New Hampshire Fire Insurance Company of Manchester, 1 Orleans App. 215.

▮ (c) Parol evidence is admissible to establish the true and moving consideration of a written contract. Sutton v. Cuppay, La.App., 41 So.2d 106.

▮ (d) Parol evidence is admissible to prove an agreement collateral or subsequent to a written contract, which modifies the contract as written. Parlor City Lumber Co., Inc., v. Sandel, 186 La. 982, 173 So. 737; Boland Machinery & Mfg. Co., Inc., v. Favret, La.App., 177 So. 836.

▮ (e) Parol evidence is admissible to establish an estoppel to contradict the construction placed on a written contract or to contradict representations as to its intent, purpose and operation. Gitz Sash Factory, Inc., v. Union Ins. Soc. of Canton, Ltd., 160 La. 381, 107 So. 232; Monroe Air Park No. 1, Inc., v. American Aviation & General Insurance Co., La. App., 41 So.2d 795.

▮ 3. The evidence adduced by plaintiff, admissible and admitted under the above rules, plainly establishes that the parties understood that the policy afforded coverage of the workmen's compensation claims of injured woodsmen, such as Ray L. Carpenter, engaged in the production of pulpwood supplied to Godfrey, regardless of the legal relationship between Godfrey and the woodsman; that premiums were charged and paid by a method consistent only with such scope of coverage; that the custom and usage of the pulpwood industry, and of the insurance business insuring such risks, support and verify the coverage claimed by plaintiff; and that defendant, by collateral and subsequent agreement, committed itself without restriction to satisfaction of the judgment which had been rendered against Godfrey. These conclusions are strengthened both by the affirmative conduct of the defendant in assuming full defense of the Carpenter suit at the outset, on the demands of

Madden and Dewitt for recovery against Godfrey, without reservation or qualification; and by the negative conduct of defendant in offering no evidence and no testimony of any agent or official in contradiction of the claims and assertions of plaintiff, or plaintiff's construction of defendant's undertakings. This latter circumstance argues most forcefully in support of plaintiff's case, since the strongest presumption operates against defendant for its failure to produce and offer any contradictory evidence whatsoever. Bastrop State Bank v. Levy, 106 La. 586, 31 So. 164; Morello v. Viola, La.App., 66 So.2d 29.

4. Plaintiff legally is entitled to recovery of his loss both on the established interpretation of the coverage of the insurance policy contract, and on the independent and subsequent agreement of defendant to protect him on the judgment in the Carpenter suit. Plaintiff relied wholly and in good faith on the representations and assurances of defendant, to his substantial detriment and change of position. Plaintiff cooperated with defendant in every way, and is entitled to the protection for which he paid. Defendant's abandonment of its insured and present contentions as to coverage limitations represent an irreconcilable conflict of interest which it should have elected to resolve at the threshold of the Carpenter litigation. Having chosen to defend Godfrey on all demands in that suit, having assumed full control of the litigation and excluded therein offerings of evidence favorable to his position, and again having induced him to relinquish his appeal to its control upon categorical assurance of protection, defendant is here estopped to contradict or deny its responsibility to satisfy that judgment and make plaintiff whole against his loss. The same substantive Louisiana law of estoppel here supports plaintiff's case against United States Casualty Company that supported recovery by Madden and Dewitt against Godfrey in Carpenter's suit. Carpenter v. Madden, La.App., 90 So.2d 508; McLain v. National Mutual

Casualty Co., La.App., 28 So.2d 680; Williston on Contracts, Rev. Ed., Vol. I, Secs. 139–140.

 5. Insurance coverage is construed according to the evident intent of the parties, the subject matter to which it relates, and matters naturally incident thereto. It is construed most strictly against the insurer in order to give the insured the protection or indemnity for which he has paid; and doubt as to coverage is to be resolved favorably to the insured, imputing to the insurer knowledge of its agents and binding it to their representations and commitments. North River Insurance Co. v. Becnel, 5 Cir., 33 F.2d 231; Edwards v. Life & Casualty Insurance Co. of Tennessee, 210 La. 1024, 29 So.2d 50; Stanley v. Cryer Drilling Co., 213 La. 980, 36 So.2d 9; Salomon v. Equitable Life Assurance Society of the United States, 202 La. 1001, 13 So.2d 329; Heiman v. Pan American Life Insurance Co., 183 La. 1045, 165 So. 195; Maggio v. State Farm Mutual Automobile Insurance Co., La.App., 102 So.2d 505; Churchman v. Ingram, La.App., 56 So.2d 297. Applying these principles to the case at bar, the Court is strengthened in its conclusion that the defendant, through its agents and officials, had knowledge of the unique operations of the pulpwood suppliers and those laborers or workmen actually engaged in the hazardous phases of the business; and knowledge of the common practice of insuring the compensation risks of those workmen under a standard policy rated as to premium by volume of pulpwood rather than by size of payroll. Understanding of its exposure was manifest in defendant's conduct; and it is not to be permitted now unconscionably to avoid the very exposure it assumed, by technical niceties or an unwarranted claim for strict construction of the policy against its insured.

 6. Having failed in its obligation legally and morally to protect plaintiff as its insured, and to furnish him the defense and representation to which he was entitled, defendant is liable

for all consequent attorney's fees incurred by plaintiff. Not only has plaintiff obligated himself to payment of the attorney's fees alleged in his complaint; the Court further finds and concludes that they are reasonable in amount, and commensurate with the work and responsibility involved. Complementary to plaintiff's right to recover attorney's fees, consequent upon defendant's default on its coverage obligations, is plaintiff's further right to recover attorney's fees as a direct element of damage flowing from defendant's breach of its collateral or subsequent obligation to protect plaintiff on the judgment when it resumed control of the case in the Court of Appeal. An insurer cannot relieve itself of liability by an unwarranted withdrawal from the case after it has assumed the defense thereof; and where there occurs such an unwarranted withdrawal, as occurred in this case, the uniform rule subjects the insurance company to liability for all costs and attorney's fees. Appelman on Insurance, Secs. 4689, 4691; Shehee-Ford Wagon & Harness Co. v. Continental Casualty Co., La.App., 170 So. 249; Kansas v. Sun Indemnity Co., La. App., 37 So.2d 621; Bordelon v. Ludeau's Lumber Yard, La.App., 177 So. 436; Milwaukee Mechanics Ins. Co. v. Davis, 5 Cir., 198 F.2d 441; LSA–R.S. 22:658.[2]

The law and the evidence being in favor of the plaintiff and against the defendant, as demonstrated in these findings of fact and conclusions of law, it follows that plaintiff should have judgment as prayed, in conformity with this Court's Ruling on Merits entered October 7, 1958. Formal decree to be presented on notice.

2. "§ 658. *Payment of claims; policies other than life and health and accident; penalties*

"All insurers issuing any type of contract other than those specified in R.S. 22:656 and 22:657 above shall pay the amount of any claim due any insured within sixty days after receipt of satisfactory proofs of loss from the insured or any party in interest. Failure to make such payment within sixty days after receipt of such proofs and demand therefor when such failure is found to be arbitrary, capricious, or without probable cause, shall subject the insurer to a penalty, in addition to the amount of the loss, of twelve per cent damages on the total amount of the loss, payable to the insured, together with all reasonable attorney's fees for the prosecution and collection of such loss, or in the event a partial payment or tender has been made twelve per cent of the difference between the amount paid or tendered and the amount found to be due and all reasonable attorney's fees for the prosecution and collection of such amount. Provided, that all losses on policies covering automobiles, trucks, motor propelled vehicles and other property against fire and theft, the amount of the penalty in each of the above cases shall be twenty-five per cent and all reasonable attorney's fees." (LSA–R.S. 22:656 refers to life insurance policies; and LSA–R.S. 22:657, to health and accident policies.)