MILLER, Judge pro tem.
Plaintiff, H. C. Tarver, brought this suit under the Workmen’s Compensation Act against Reimers-Schneider Lumber Company, Inc., (hereinafter called Reimers-Schneider) his alleged employer, and John W. Fisk Company, Inc., the alleged workmen’s compensation insurer of Reimers-Schneider, seeking compensation benefits for injuries received on August 10, 1955. Suit was filed on February 1, 1956, and the case was tried on January 3, 1961. On February 17, 1961, the trial court, for oral reasons assigned, rendered judgment in favor of defendants. Formal judgment to *540 that effect was signed on June 12, 1961, and on the same day, plaintiff moved for this appeal.
Plaintiff and one of his employees, Noel Booty, were the only witnesses who testified concerning the accident. Plaintiff testified that for several years prior to 1955, he was engaged in the logging business. That some three or four weeks prior to the occurrence of the accident he went to defendant’s place of business where he talked to Mr. Reimers, the then president of defendant company. Mr. Reimers died before the date of the trial. He states Mr. Reimers told him defendant would purchase logs from him, provided that he pay $9.10 per $100.00 of stumpage, on all logs hauled to Reimers-Schneider, in order to pay for workmen’s compensation premiums covering plaintiff and his employees. This was the first business transaction he had with Reimers-Schneider.
The particular timber tract on which the accident occurred was not owned by either plaintiff or Reimers-Schneider. Plaintiff bought the standing timber from a person whose name he does not remember for the price of $1,750.00. In August, 1955, plaintiff had five employees working for him, to whom he paid an hourly wage, depending on their worth and experience. Pie did not have any workmen’s compensation insurance, except what Reimers-Schneider may have provided for him, and which insurance premiums were to be paid for by the deductions made from the timber sold.
Plaintiff further testified that a few days before the accident, the log procurer for Reimers-Schneider, came to see him for the purpose of purchasing 20 foot logs for manufacturing into 2" by 10" boards. That on August 10, 1955, while loading one of these 20 foot logs, the log hung under the truck bolster and as he, plaintiff, pulled one end back to allow his employee to hoist it clear, the log fell on him, breaking his right leg. He does not state that this particular log was in fact hauled to Reimers-Schnei-der’s yard. Noel Booty, who corroborates the occurrence of the accident also failed to testify that this particular load of logs was hauled and sold to Reimers-Schneider.
Under the agreement with Reimers-Schneider, plaintiff hauled logs to their plant on July 25, July 26, July 27, August 22, August 24, August 25, September 2, and September 5, 1955. The logs hauled during the week ending July 28, 1955, were paid for by check issued in the sum of $238.20 which included a deduction of $11.-35 for insurance. The logs hauled during the week ending August 25, 1955 were paid for by check issued in sum of $252.49, which included a deduction of $3.93, for insurance and $2.42 for severance tax. The logs hauled during the week ending September 8, 1955, were paid for by check issued for $154.04, which included a refund of $15.28 for insurance previously deducted in error. Plaintiff never cashed this last check since it contained a return of the insurance premiums.
The record shows that plaintiff would sell logs, poles, and other timber products from the timber tracts he purchased, to whomsoever was in the market for such products. For instance during the period that he sold logs to Reimers-Schneider, he also sold the following products:
TO JOSLYN MANUFACTURING COMPANY
Week Ending Amount Sold
July 16, 1955 $ 53.50
July 22, 1955 146.75
July 29, 1955 32.12
August 12, 1955 453.76
TO H. F. FREILER OIL FIELD LUMBER CO.
August 27, 1955 1,298 bd feet
September 3, 1955 4,710 bd feet
It is noteworthy that for 13 days preceding and extending to 12 days subsequent to the accident he did not sell nor deliver one single log to defendant, Reimers-Schneider, whereas during the very week of the acci *541 dent he sold and delivered $453.76, worth of poles to Joslyn Manufacturing Company. We are convinced that on the day plaintiff was injured he was cutting and hauling poles to Joslyn Manufacturing Company and not logs to Reimers-Schneider.
The record further indicates that defendant Reimers-Schneider, would deduct insurance premiums from all loggers who did not furnish them with a certificate of insurance. Such requirement was made not only for those loggers that defendant maintained control and supervision over, such as the loggers cutting defendant’s own tract, but to all loggers who sold and hauled to their yard. The amounts so deducted were paid to John W, Fisk Company which was stated to be the Underwriter’s for Lloyds of London. There is nothing in the record to show that John W. Fisk Company or Lloyds of London ever issued any insurance policy covering these loggers or their employees.
It is also clear from the record that plaintiff is totally and permanently disabled under the purview of the Louisiana Workmen’s Compensation Act. In the accident, plaintiff suffered a double fracture of the right leg, involving the tibia and the fibula. Dr. J. H. McClendon, the only medical witness who testified at the trial, stated that the bone of the lower leg, which is the bone below the knee is necrosed and dead; that plaintiff was suffering from anklyosis of the bone which prevented the free movement of his right leg; and that these physical disabilities were directly attributable to the injury, and the condition would be permanent.
In this court plaintiff complains of the following four errors committed by the court below:
“1. It was reversible error for the Court below to hold plaintiff an independent contractor whereas he was, in fact, an employee of Reimer-Schneider Company, Incorporated, under all adjudged tests.
“2. It was error for the Court to hold plaintiff not an employee when his employer and his insurer elected to insure and/or extend workmen’s compensation insurance to cover plaintiff as an employee by deducting the sum of $9.10 per each $100.00 of stumpage for workmen’s compensation insurance which deduction was a condition precedent to employment as logger.
“3. Employer, Reimers-Schneider Company, Incorporated, and insurer, John W. Fisk Company agreed expressly and impliedly elected to class and make plaintiff, H. C. Tarver, an employee, therefore should be bound in judgment either in solido or separately.
“4. In any event, it was error; for the court to deny plaintiff compensation on the basis of estoppel, wherein the employer required workmen’s compensation coverage in advance of employment as logger; that the insurer and insured elected and retained $9.10 per $100.00 stumpage representing that it was for workmen’s compensation to cover plaintiff as an employee and under such acts and representations it was error for the court to refuse plaintiff workmen’s compensation because employer and insurer were equitably estopped to deny coverage.”
We find that plaintiff’s first assignment of error is clearly without merit. Even if we should hold that plaintiff was in fact the employee of Reimers-Schneider, instead of a seller of logs to said defendant, the evidence shows that at the time of the accident, plaintiff was not performing services for Reimers-Schneider.
LSA-R.S. 23:1035 provides in part:
“The provisions of this Chapter shall also apply to every person performing services arising out of and incidental to his employment in the course of his employer’s trade, business, or occupation in the following hazardous trades, businesses, and occupations.”
*542 We conclude therefore, that since the logs being loaded by plaintiff on August 10, 19SS, and which logs were involved in this accident were not sold nor delivered to Reimers-Schneider, then plaintiff's employment, if any, was not in the course of Reimers-Schneider’s business. Consequently, it makes no difference whether or not plaintiff was in fact an occasional employee of Reimers-Schneider.
We likewise, find that assignments of errors numbered 2 and 3 are without merit. Even if we were to hold, which we certainly are not inclined to do, that plaintiff and the defendants could elect to come under the provisions of the Louisiana Workmen’s Compensation Act, such election would necessarily be limited to the services that plaintiff performed in the furtherance of Reimers-Schneider’s business, and could not be extended to cover services performed by plaintiff in the furtherance of a third party’s business.
In support of the fourth assignment of error which is founded on the doctrine of equitable estoppel, plaintiff cites Stevens v. Mitchell, 234 La. 977, 102 So.2d 237; Hano v. Kinchen, et al., La.App., 122 So.2d 889, and Carpenter v. Madden, La.App., 90 So.2d 508. In the Stevens case suit was filed by the widow of Mitchell’s former employee in Workmen’s Compensation, for an accident which resulted in the death of her husband. The suit was filed against defendants Mitchell, Tullos and Consolidated Underwriters, Tullos’ insurer. The facts showed that one Griffon discussed with defendant Tullos, the future sale of timber, by Tullos to Griffon. When Griffon wanted to dispose of the timber, he negotiated with defendant Mitchell to cut and deliver the logs to the purchaser Tullos. With the consent of Tullos, Mitchell discussed with Griffon, the price to be paid for the timber, from which price was deducted insurance premiums with which Tullos had promised to obtain but had failed to procure Workmen’s Compensation insurance covering Mitchell’s employees. Stevens was killed while cutting logs for Mitchell. The Supreme Court rendered judgment in favor of plaintiff in solido against Mitchell, Tullos and Consolidated Underwriters, but held that Tullos was not entitled to recover from Mitchell because Tullos had not obtained the insurance coverage he had promised. Judgment against Consolidated Underwriters was predicated upon the principle that the legal relationship between Tullos and Mitchell was not that of buyer and seller, but that of principal and independent contractor and Tullos, as the principal contractor was liable to plaintiff under the authority of Kline v. Dawson, 230 La. 901, 89 So.2d 385.
In the Hano case the plaintiff was the widow of one Hoyt Hano, who was killed while cutting logs for defendant, Edward Kinchen. By third party petition, Kinchen impleaded as defendants, H. F. Freiler, Freiler Industries, Inc., and Consolidated Underwriters. The facts of the case showed that Kinchen had agreed with Freiler, president of Freiler Industries, Inc., to sell logs to Freiler Industries, Inc. In this agreement Kinchen was to pay Freiler Industries, Inc., $15.00 per $100.00 of payroll developed weekly for the purpose of providing workmen’s compensation insurance on Kinchen’s employees. When no logs were sold to Freiler, Kinchen would send his personal check to Freiler for the payment of the compensation premiums, based on the payroll developed during that particular week. The court found as a fact that Freiler never purchased a policy for Kinchen’s employees, nor did Consolidated Underwriters, Freiler’s compensation carrier, issue a policy covering Kinchen’s employees. The court held that Freiler Industries, Inc., was estopped from denying liability because it had accepted funds from Kinchen for the express purpose of securing insurance for Kinchen’s employees. The court, however, denied recovery against Consolidated Underwriters because they were the insurers of Freiler Industries, Inc., only and the relationship *543 between Kinchen and Freiler Industries, Inc., was strictly that of vendor and vendee and not that of independent contractor and principal contractor.
The Carpenter case also involved the question of collecting for workmen’s compensation insurance by a log purchaser and not procuring a policy covering seller’s, employees. The purchaser did not obtain the desired protection despite his representation that he had done so or would do so. It was there held that the purchaser was responsible for compensation payments to seller’s injured employee under the doctrine of equitable estoppel.
In the present case we find that the relationship between plaintiff, Tarver, and defendant, Reimers-Schneider, was that of vendor-vendee. We likewise find that Reimers-Schneider did agree to procure workmen’s compensation insurance coverage for Tarver’s employees, but this coverage was to be limited only to the logs sold and delivered to the Reimers-Schneider yard.
On their facts the foregoing cases differ from the instant case in two important .respects, both of which are fatal to plaintiff’s present contention. Equitable estoppel, which is unfavored under our law, is only invoked when a party relies on the promise of another, to his prejudice. In the instant case Tarver knew he was paying insurance premiums only on the logs hauled and sold to Reimers-Schneider, and could, at best, only expect that his logging operations which ultimately culminated in Reime-rs-Schneider receiving the logs, would be covered by this insurance. In the cited cases heretofore discussed, all of the sellers’ operations were to be covered by the insurance and premiums were paid by the sellers on the total of their operations.
In the instant case Tarver was an employer and could not purchase workmen’s compensation insurance to cover his injuries, since he would not be liable to himself under the workmen’s compensation act. Therefore, even if we should conclude that Tarver failed to secure a compensation policy on his own because he believed that Reimers-Schneider had secured one for him, he was not prejudiced thereby since such policy would not have afforded him any protection in this case. In the cited cases recovery was allowed to the sellers’ employees and not sellers’ as against the buyer who had promised, but failed to obtain the desired coverage. We therefore find no merit in plaintiff’s fourth assignment of error.
For these .reasons, judgment of the district court is affirmed, plaintiff to pay all costs of this appeal.
Affirmed.