O’NIELL, Chief Justice.
 

 This is a suit to recover from a building contractor the cost of remedying certain defects in several buildings constructed for the plaintiff. The contract was made on a cost-plus basis, allowing the contractor for his services 10% on the cost of the labor and materials used in the buildings. The contract was a verbal one; hence there is some dispute about its terms or details.
 

 There are six distinct claims for remedies and repairs which the plaintiff alleges he was obliged to make after the buildings were turned over to him. The buildings consisted of a number of tourist cabins and garages and a cocktail lounge, to be built on plaintiff’s land near Shreveport. After hearing the evidence the district judge rejected the plaintiff’s demand. He is appealing from the decision.
 

 His first complaint is that the outside doors of the cabins buckled; which means that the veneering in several instances buckled away from the door itself, as the result of rain water getting in behind the veneer and softening the glue between the veneer and the wood surface. The evidence is conflicting as to whether veneered doors, of the type which were used in this instance, were suitable for outside doors. The defendant admitted that the doors were not waterproof, but he contended that they were suited for outside doors and were used instead of waterproof doors as a matter of economy. Our conclusion from the conflicting testimony in the case is that the doors were not suited for the purpose of outside doors and that the defendant therefore breached the obligation of his contract to use or recommend to the subcontractors suitable materials. Our conclusion as to this item therefore is that the defendant is liable for the cost of replacement of the doors. The cost of installing suitable doors will be greater, of course, than the original cost of the doors which were not suitable. The defendant should be held liable only for the original cost of the doors, because if the suitable doors had been installed they would have cost the plaintiff more than the doors which were installed. The evidence shows that there are 31 doors on which the veneering has buckled, and which will have to be replaced with suitable doors. The cost of the 31 doors was $11 each plus the 10% commission, or $12.10 per door, making a total of $375.10. But, inasmuch as the doors which have buckled
 
 *259
 
 were not altogether worthless, but were of some value to the plaintiff, we have concluded that an allowance of $250 for this item will meet the ends of justice.
 

 The second claim of the plaintiff is that a well which was drilled to supply-water to the cabins did not produce potable water. The original plan or intention of the parties was to secure water from the Shreveport waterworks. But it developed that that would be too expensive. Hence it was decided that the contractor should have a subcontractor to drill a well. It was known by both parties to the contract that water from a well in that vicinity was apt to be brackish and unsatisfactory. The contractor obtained bids from two subcontractors, and after he and the plaintiff had discussed the two bids they decided to accept the bid made by one Forsong. His bid did not carry a guarantee as to the quality of the water to be obtained. The other bid did carry such a guarantee, but according to the evidence amounted to about four times as much as Forsong’s bid. The well which he drilled produced water which was brackish, and unfit for drinking purposes. The plaintiff, therefore, subsequently had two other wells drilled, the second one of which produced satisfactory water. The plaintiff did not at any time attempt to have the original well re-worked, notwithstanding there is evidence to the effect that it might have become satisfactory if it'had been re-worked. Inasmuch as the plaintiff was a party to the acceptance of Forsong’s bid, knowing that it carried no guarantee of producing suitable water, and knowing that the result was apt to be unsatisfactory, our conclusion is that he is not entitled to be compensated for the loss or cost resulting from the acceptance of the Forsong bid. There is some evidence to the effect that the well was drilled in an unsatisfactory way and with unsuitable pipe, but we do not consider the evidence sufficient to establish those facts. The plaintiff’s claim for the drilling of the well therefore was properly rejected by the district court.
 

 .The plaintiff’s third claim is for the cost of painting a water tank which was discolored by impure water from the original well. Since we have concluded that the defendant is not liable for the failure of the well to produce pure water it follows that he is not liable for the discoloration of the tank caused by the overflow of the water.
 

 The plaintiff’s fourth claim is for the cost of repairing the floor of the cocktail lounge which in consequence of dampness became buckled in several places. The floor was constructed by laying first a four inch concrete slab, then laying on the slab a membrane of waterproof paper, and on top of that applying a coat of pitch. Wooden strips or screeds were fastened to the concrete, and the floor was laid on the screeds. The plaintiff contends that this method of construction was faulty in that two coats of pitch should have been
 

 
 *260
 
 applied to the concrete slab, the two coats of pitch being separated by a membrane of waterproof material, and that the applying of only one coat of pitch, instead of two coats separated by the membrane, is what caused the buckling of the floors, by allowing moisture from the ground to penetrate into the wooden or upper layer of the floor and causing it to expand. The defendant’s contention is that the buckling of the floor was caused by negligence on the part of the plaintiff, in allowing a drain behind the bar in the cocktail lounge to become stopped up, causing water that was spilled on the floor behind the bar to spread over the floor beyond the bar. Two expert witnesses for the plaintiff and one for the defendant testified that the proper way to construct a waterproof floor was to apply two coats instead of one coat of pitch to the concrete slab, with a waterproof membrane between the two coats of pitch. The evidence convinces us that the buckling of the floor was caused by defective construction in applying only one coat of pitch on the concrete slab, instead of two coats separated by a waterproof membrane, and that the defendant therefore is liable for the cost of replacing the floor. One witness for the plaintiff estimated the cost at $500 and another estimated it at $530. Inasmuch as the wood in the floor may be salvaged to some extent, and considering that the floor served its purpose for a considerable time, our conclusion is that the estimated cost should be reduced, and that an allowance of $300 to the plaintiff would do justice.
 

 The fifth item in the plaintiff’s claim is for the cost of repainting parts of the interior walls beneath the windows in the cabins. The plaintiff contends that the window sills were not properly waterproofed or protected by metal flashing against the entering of rain water, and that that is what caused the paint below the windows to flake. The defendant insists that the windows were properly waterproofed, and that the flaking of the paint below them was caused by the condensing of moisture on the inside of the windows ¡ during cold weather and the running down of the condensed water onto the wall be-' low the windows. He contends also that' the plaintiff was guilty of negligence in that he allowed the interior of the cabins to be heated without being properly ventilated, thus causing an excess of condensation of moisture on the windows. We are relieved of the necessity for deciding whose fault caused the paint to flake, because the plaintiff has failed 'to prove the amount of his loss, if any he suffered, by the flaking of the paint below the windows of the cabins. The reason for this failure of proof is, first, that the number of cabins in which the paint flaked below the windows is not shown, and second, the evidence shows that the interior walls, in many instances, were soiled and needed repainting, regardless of the flaking of the paint. There is evidence to the effect that casein paint was used on the interior walls of
 
 *261
 
 the cabins, and that because of the use of that kind of paint the places where the paint flaked could have been repainted without requiring the repainting of other parts of the walls to preserve their appearance. There is no proof in the record as to how much of the cost of repainting the interior walls of the cabins was attributable to the flaking of the paint below the windows.
 

 The sixth and last item in the plaintiff’s claim is for damage caused by cracks in the stucco on the exterior walls of the cabins. The plaintiff contends that the cracks were caused by improper application of the metal wire backing to which the stucco was applied. There is considerable evidence that this wire backing was not applied in every instance according to the manufacturers’ specifications. But there is no proof that that is what caused the cracking of the stucco, except the opinion of two expert witnesses for the plaintiff. Against this there is a preponderance of evidence that the appearance of seasonal hairline cracks in stucco buildings, within a year after construction, is not uncommon. The defendant contends that the cracks which appeared in .this instance were only hairline cracks and should have been painted over before they became too noticeable. The testimony shows that the largest of the cracks in the outer walls of the buildings in this instance were not wider than “a small knife blade”,— from which we infer that the cracks were so small that they could have been filled permanently by being painted over soon after they made their appearance. There is a preponderance of evidence to the effect that the plaintiff was warned at the time when he accepted the buildings that the seasonal cracks were apt to appear and that they would have to be painted over. The defendant testified that he did not undertake to do this painting over of the seasonal cracks which might appear; and his testimony is not contradicted except by the denial of the plaintiff that he was ever warned that such cracks would appear. Our conclusion is that the claim for the cracks in the stucco was properly rejected by the district court.
 

 The defendant seeks to escape liability on the ground that he was not an independent contractor but was only an agent of the plaintiff. We consider it a matter of no importance whether defendant’s relation to the plaintiff should be termed an independent contractor or an agent for the plaintiff. The defendant admits that at the time of entering into the contract he held himself out to the plaintiff as a competent builder and contractor and that he undertook to supervise for the plaintiff the construction of buildings suitable for the purpose for which they were intended. He testified that he agreed to employ the best of mechanics available and to recommend suitable material for the construction. From these admissions we conclude that the defendant is liable for the two defects,
 
 *262
 
 namely, the buckling of the outside doors of the cabins and the buckling of the floor of the cocktail lounge.
 

 The sum of the two items which we have concluded should have been allowed, $250 for the buckling of the outside doors and $300 for the buckling of the floor of the cocktail lounge, amounts to $550, which the plaintiff is entitled to recover.
 

 The judgment appealed from is annulled and it is now ordered, adjudged and decreed that the plaintiff shall recover of and from the defendant $550, with legal interest from the date of judicial demand, and the costs of this suit.