127 So.2d 24 (1961)
Anthony ROTOLO
v.
H. B. STEWART, D/B/A Stewart Plumbing & Heating Co. et al.
No. 5153.
Court of Appeal of Louisiana, First Circuit.
January 30, 1961.
*25 J. Elton Huckabay, Baton Rouge, for appellant.
D'Amico & Curet, Baton Rouge, for appellees.
Before ELLIS, LOTTINGER, JONES and LANDRY, JJ.
LANDRY, Judge.
In this action plaintiff Anthony Rotolo seeks to recover the cost of repairing certain damages to his residence allegedly sustained as the result of faulty or defective installation of a dishwasher purchased from defendant Baton Rouge Furniture Company, Inc., and installed by defendant H. B. Stewart, d/b/a H. B. Stewart Plumbing & Heating Co. In addition to the aforesaid defendants, Iowa Mutual Insurance Company (liability insurer of Stewart) is also made defendant herein and sought to be held in solido with Stewart and Baton Rouge Furniture Company, Inc. For the sake of brevity defendant Baton Rouge Furniture Company, Inc. shall hereinafter be referred to simply as "Furniture Company"; H. B. Stewart d/b/a Stewart Plumbing & Heating Co. shall hereinafter be designated as "Stewart" and defendant Iowa Mutual Insurance Company shall hereinafter be denominated "Iowa".
In the court below judgment was rendered in favor of plaintiff against defendant Iowa, said judgment being predicated upon the doctrine of estoppel rather than policy provisions. Plaintiff's claim was dismissed as to both Furniture Company and Stewart. Iowa has appealed the judgment against it in the sum of $790, which appeal has been answered by plaintiff who seeks an increase in the award received against said defendant. Plaintiff has appealed the judgment rejecting his claims against Furniture Company and Stewart, which defendants have answered plaintiff's appeal asserting the correctness of the trial court's judgment. In addition to answering plaintiff's demand, defendant Furniture Company filed herein a third party petition seeking recovery from Stewart and Iowa of any amount for which Furniture Company may be cast in these proceedings. The judgment of the trial court rejecting and dismissing said third party petition has been appealed by defendant Furniture Company. All appeals have been consolidated in this court.
During December, 1956, plaintiff's father-in-law purchased from defendant Furniture Company a dishwasher to be installed in plaintiff's home. Under contract with defendant Furniture Company the appliance was installed by defendant Stewart and his employees and approximately two months subsequently extensive damage to the floors in plaintiff's kitchen and living-dining room was discovered, the cause thereof being determined to be a leak in the hot water line which had been run to supply hot water for the operation of the dishwasher.
The issues raised on this appeal by the contending litigants herein may be summarized as follows: (1) Did defendant Stewart install the dishwasher in a faulty or defective manner?; (2) Was the legal relationship between defendant Furniture Company and Stewart such that the Furniture Company is responsible for Stewart's negligence?; (3) In the event of Stewart's liability to plaintiff, was such liability covered *26 under the policy issued by defendant Iowa as Stewart's liability insurer?; and (4) Irrespective of policy provisions, is Iowa liable to plaintiff herein on the basis of waiver and estoppel?
It is undisputed that plaintiff's father-in-law purchased from defendant Furniture Company, a "package deal" whereunder said defendant not only agreed to sell the appliance in question but attend to its installation for an additional fixed charge. In pursuance of said agreement defendant Furniture Company (either through its own agents or representatives of the manufacturer of the dishwasher) engaged Stewart to perform all plumbing work necessary to install the machine, it being conceded plaintiff had no contact whatsoever with Stewart relative to the matter. Moreover, it is not contradicted that upon observing the damage, plaintiff notified and lodged complaint with the Furniture Company, not Stewart.
Proper operation of the dishwasher being dependent upon a supply of hot water, the dishwasher was connected to the hot water system in plaintiff's home by defendant's employee, Corsentino, a journeyman plumber, who cut the hot water supply line running beneath the residence, inserted a "T" coupling therein, placed a short nipple in the "T", affixed a line of copper tubing to the "T" and ran the tubing from the "T" to the intake pipe of the machine thus providing a source of hot water for the appliance in question. As thusly installed the machine operated without incident except that on an undisclosed date following installation plaintiff began to note the formation of a "bump" or "hump" in his kitchen floor. The defect in the floor progressed to such extent that approximately 60 days after the dishwasher was installed the oak flooring in plaintiff's combination living-dining room showed indications of damage and it was at this point that plaintiff contacted defendant Furniture Company and complained of the situation.
Upon being notified of this condition the Furniture Company contacted Stewart who upon examination discovered water was leaking from the connection formed when the "nipple" was inserted into the "T" hereinabove described.
Stewart testified that apparently the nipple had become disengaged from the "T" in such fashion that only one or two threads were engaged on one side thereof and instead of being screwed into the "T" at a perfect right angle it was "cocked" or slanted. According to Stewart the connection was leaking in such fashion that the water emanating therefrom was directed toward the ground and not upward toward the floor. On this issue he is contradicted by plaintiff who testified that before notifying the Furniture Company of the damage to his floor, he crawled under the house and found that the joint was leaking and directing a fine mist or spray upward wetting both the floor joists and subfloor. In this regard plaintiff's testimony is corroborated by that of the carpenter who repaired the damage and who testified that the flooring he removed was wet from water and that the sub-floor was so saturated it was necessary to permit it to dry for several days before new flooring could be applied.
The testimony of several master plumbers who testified on the trial of this case shows that to properly insert a nipple into a "T" the nipple should be screwed into the "T" approximately 3/8 to ½ inch so as to engaged at least six or seven threads of the nipple thus insuring a connection that is not only at right angles to the "bull" or opening of the "T" into which it is inserted but also one that is firm and will not permit water to escape.
Defendant's employee Corsentino (who installed the plumbing) testified the "T", nipple and copper tubing were all properly installed and that after completing all connections, he turned the water on, went under the house to observe for leaks and found none. He was not certain whether the machine was actually run and tested for leaks while in operation as he was not sure whether the electrician had completed *27 his work when he (Corsentino) made his inspection.
Defendant sought to explain the incident by testifying that in his opinion the connection was loosened by a freeze which caused the nipple to pull part way out of the "T", loosening the connection and causing the joint to leak. In this regard he is corroborated not only by the testimony of Corsentino but also one Russell Weaver, a journeyman plumber, both of whom also testified that in their experience they have known of instances in which sub-freezing temperature will cause joints, pipes and connections to either break or pull out thus resulting in a leak or ruptured water line.
Opposed to defendant's contention a freeze was responsible for the condition which developed, is the testimony of plaintiff's witness Sam Vince, a plumber with thirty years experience, who testified that if a freeze had forced the nipple out of the "T" the threads on the "T" would have been damaged or stripped considering the "T" is made of malleable cast iron whereas the nipple is made of galvanized steel. In this regard the testimony of Stewart is clearly to the effect the "T" was not damaged and was permitted to remain in the line, the damage being repaired simply by making and inserting a new nipple into the "T" and reconnecting the copper tubing thereto. On this same issue we deem of considerable significance the fact that the evidence shows plaintiff's home is brick veneer and although constructed on piers or pillars extending two feet above ground, the area beneath the house is enclosed by the brick exterior wall which commences on a foundation below the surface of the lot on which the house is situated. At various intervals around the perimeter of the residence have been placed openings or "breathers" approximately 9 x 12 inches to permit circulation of air beneath the house and at the center rear thereof is situated an opening sufficiently large to permit a person to crawl under the house in the event such action became necessary. Plaintiff's testimony is clearly to the effect he has lived in the home some 8 years and because of the protection afforded his water pipes by the brick wall surrounding the residence he has never had a broken pipe caused by freezing weather nor has he ever had to take the precaution of cutting off his water to prevent frozen or broken pipes.
We are not particularly impressed by the stipulation of record which indicates that on three days prior to discovery of the damage, namely, January 16, 17 and 19, 1957, sub-freezing temperatures were recorded in the City of Baton Rouge (wherein plaintiff resides), from which defendants seek to draw the conclusion the freezing weather caused the nipple to pull out of the "T". We note with more than passing interest the lowest temperature recorded on said dates was 26 degrees above zero, only six degrees below freezing. Assuming, as defendants contend, freezing weather could cause the nipple to disengage from the "T" we do not believe that a low of 26 degrees above zero could possibly have caused such an occurrence in this instance considering the protection afforded the pipes beneath plaintiff's residence by the brick wall hereinabove described.
Additionally, we note plaintiff's testimony to the effect he began to notice a small bump in his kitchen floor shortly after Christmas from which we conclude the damage had at least commenced by this date. The only evidence of record concerning freezing temperatures subsequent to the installation is that which occurred January 16, 17 and 19, 1957, after the pipe had commenced leaking. Moreover, we believe that had a freeze occurred of sufficient intensity and duration to cause the pipe to pull out of the fitting it most assuredly would have rendered the dishwasher temporarily inoperable by shutting off the supply of water until the ice in the line thawed. The record is not only barren of evidence to the effect the machine was ever rendered disserviceable but *28 also shows that plaintiff learned of the faulty connection when he investigated to determine the cause of the damage to his kitchen floor.
Considering the foregoing testimony, we believe the record reveals the plumbing was initially installed in a defective and negligent manner in that Stewart's employees did not properly insert the nipple into the "T" and tighten same to the extent a firm joint was attained. In our view, no other conclusion is supportable under the testimony before us. We believe our learned brother below erred in releasing Stewart from liability and in this regard his judgment must be amended.
The liability of defendant Furniture Company appears equally as well established in the record. As previously stated, there is no controversy concerning the circumstances under which the dishwasher was purchased. Defendant Furniture Company contracted to deliver and install the appliance and having so contracted is responsible for damages occasioned by its improper and defective installation. The law of this state is settled to the effect a vendor who sells an appliance and has it installed warrants that it will serve the purpose for which it was designed and that it will be safely and properly installed. Articles 2769, 2475, 2476, 2520, 2541, 2542 and 2544, LSA-C.C., McGuire v. Dalton Co., La.App., 191 So. 168. Similarly a contractor is bound to warrant his work and is responsible for damages occasioned by defective workmanship or installation. H. B. Stewart is likewise liable for the damages occasioned by the defective installation. Marine Insurance Company v. Strecker, 234 La. 522, 100 So.2d 493; Rinaudo v. Treadwell, 212 La. 510, 32 So.2d 907; LSA-C.C. Articles 1930, 2769, 2315; McGuire v. Dalton Co., Inc., La.App. 1 Cir., 191 So. 168; LSA-C.C. Article 1890.
Of the cases hereinabove cited that of McGuire v. Dalton Co., Inc., supra, is more nearly in point with the case at bar. In the McGuire case this court affirmed a judgment against both the seller and installing contractor for damages sustained by the purchaser's daughter as the result of faulty adjustment of a gas stove. In addition to defenses similar to those raised herein, the defendant in the McGuire case sought to relieve himself of liability by pleading the contract of sale was not with plaintiff therein but plaintiff's father. We held therein that plaintiff daughter was not a stranger to the transaction but a party in interest and therefore enjoyed privity to the contract covering sale and installation of the instrumentality involved. Although the issue of privity has not been raised in the case at bar there is no question but that our ruling in the McGuire case is applicable herein since the sale in the instant case was made in contemplation of the fact the dishwasher would be installed in plaintiff's home and plaintiff accepted all legal premises arising therefrom by permitting installation of the machine in his home.
In the case at bar it is clear that defendants Furniture Company and Stewart have failed to discharge the burden incumbent upon them pursuant to the contract to sell and install the dishwasher herein involved. It follows that the action of the trial court in exonerating said defendants was erroneous and in this regard must also be amended.
Before considering the plea of estoppel herein urged by plaintiff and the defenses thereto tendered by defendant Iowa, we deem it advisable to narrate in some detail the circumstances and events on which the plea and defense thereto are predicated.
Shortly after Christmas, 1956, plaintiff Rotolo noticed a small bump in his kitchen floor. The defect progressed with time and became so pronounced as to prompt plaintiff to request defendant Furniture Company to inspect the dishwasher. The serviceman sent out by Furniture Company examined the machine but found no leak therein. Approximately one week subsequent to said *29 inspection plaintiff, having become alarmed over the condition of his floor, crawled under the house and observed a spray or mist emanating from the joint in question. He noted water spraying upward on the floor joists and subfloor which were dripping water and in addition detected a large wet spot on the ground. Plaintiff immediately notified defendant Furniture Company who in turn summoned Stewart who personally went to the Rotolo residence and repaired the leak. Stewart informed plaintiff that the damage was covered by Stewart's insurance and the incident would be reported to the company. Upon Stewart informing representatives of defendant Iowa of the occurrence said defendant's adjuster John W. Rather was sent to plaintiff's home to investigate the loss.
After a rather perfunctory inspection of the premises Rather informed plaintiff the loss was covered by Stewart's liability policy but that since it was impossible to determine the extent of damage without first removing the damaged flooring he suggested plaintiff get a contractor and proceed with the work. When the repair process progressed to the point the flooring was removed and the sub-flooring exposed, Rather returned to plaintiff's home, made another inspection, authorized plaintiff to proceed with the repairs, instructed plaintiff to furnish him with statements covering the cost of the completed work and assured plaintiff the statements would be paid by his company. Rather's testimony indicated he reported the loss to defendant Iowa on February 12, 1957, shortly after his initial inspection. After all repairs had been completed and invoices of the cost thereof were submitted to and reviewed by defendant Iowa said defendant then informed its adjuster the loss was not covered by the policy issued Stewart.
The contention of defendant Iowa that the doctrine of estoppel is not available to plaintiff because it was not specially pleaded in the initial petition filed herein, is without foundation under the facts and circumstances attending the instant matter. The numerous cases cited by defendant Iowa as holding a plea of estoppel must be specially pleaded all concern instances in which defendant seeks to tender such issue as a defense. Admittedly our jurisprudence is settled to the effect that a plaintiff relying upon a plea of estoppel must specifically plead same. However, defendant overlooks that line of cases which clearly establish the rule that a formal plea of estoppel by plaintiff is not necessary to avoid the effect of a defense raised by defendant. Warren v. Police Jury of Washington Parish, La.App. 1 Cir., 12 So.2d 643, Hartsfield v. Green, La.App. 2 Cir., 62 So.2d 180. See also Sanders De Hart v. Continental Land & Fur Co., Inc., 205 La. 569, 17 So.2d 827. The wisdom and justice of the principle enunciated in the foregoing authorities is undoubtedly dictated by our procedural rules which do not admit of replication by plaintiff after defendant files answer. The plea of estoppel herein tendered to offset defendant's contention of lack of coverage need not have been specially pleaded by plaintiff.
Defendant Iowa next contends the plea of estoppel is especially barred and prohibited by the provisions of the Louisiana Insurance Code, LSA-R.S. 22:651, and more particularly Subdivision (3) thereof which reads as follows:
"R.S. 22:651. None of the following acts by or on behalf of an insurer shall be deemed to constitute a waiver of any provision of a policy or of any defense of the insurer thereunder:
"(3) Investigating any loss or claim under any policy or engaging in negotiations looking toward a possible settlement of any such loss or claim. Amended and reenacted Acts 1958, No. 125."
We agree with learned counsel for defendant insurance company that the foregoing statutory authority provides mere investigation of a loss or claim under a policy *30 or negotiations looking toward a possible settlement thereof would not constitute waiver of the defense of lack of coverage or policy exclusion, but we do not agree with the contention the action of the adjuster in the instant case did not progress beyond the point of investigation and mere negotiation. In the instant case there was an investigation of the claim pursuant to which unqualified recognition of liability was made and confessed to plaintiff herein. There was no negotiation toward settlement of a dispute for the simple reason there was no dispute to settle. Defendant Iowa, through its agent (by whose actions it is unquestionably bound) readily conceded liability, authorized repair of the damage and unequivocally assumed responsibility for payment thereof. The result of such events was a definite and distinct contract and agreement by which an admitted liability was settled on a specific basis. Under the circumstances shown, it is clear that in legal contemplation defendant insurer must be held to have waived the defense of exclusion of absence of liability irrespective of the statutory authority so confidently relied upon by said defendant.
The only remaining contention of defendant Iowa is that plaintiff may not prevail in his plea of estoppel because plaintiff has failed to establish reliance upon the representations of defendant's agent to plaintiff's detriment. That plaintiff relied upon the statements of the adjuster to the effect the loss was covered and defendant Iowa would defray the cost of repairs is not open to question in view of the testimony of record. Iowa maintains plaintiff has suffered no prejudice in relying upon the statements of Rather because plaintiff would have had to repair the damage in any event and there is no showing that the cost thereof was increased by virtue of the representations made. We believe this contention refuted by the evidence herein. Had plaintiff not been led to believe Stewart's insurance would cover the loss he undoubtedly would not have ordered the repairs made until he had taken the precaution of determining wherein responsibility for the damage rested. The record shows he ordered no repairs made until he first obtained approval of the adjuster which indicates that in his own mind he had no intention of expending the cost of repair until the question of liability therefor was determined to his satisfaction. Had there been a denial of liability by defendant Iowa from the outset, plaintiff would undoubtedly have made an independent investigation to determine the cause of the damage and the parties responsible therefor. Of considerable significance in this regard is the testimony of Stewart to the effect that had Rather declined liability from the beginning he, Stewart, could have effected the repairs through friends at a cost considerably less than that actually expended. The action of Rather in authorizing performance of the work on an actual cost basis placed plaintiff in an irrevocable position with regard to the expense of repair inasmuch as under the circumstances shown he became responsible therefor irrespective of the amount thereof. Had he not been so assured by defendant's representative he, with Stewart's assistance, could and probably would have made more favorable arrangements. We believe our pronouncements on the issue of estoppel enunciated in Southwest Machine Shop v. Delta Equipment & Construction Company, Inc., La.App., 101 So.2d 458, appropos herein.
Our finding that the trial court properly held defendant Iowa under the theory of waiver and estoppel herein advanced by plaintiff obviates the necessity of consideration of the defense of policy exclusion or lack of coverage.
Defendant Stewart having breached the obligations of its contract with the Furniture Company is liable to said party under the third party demand filed herein. The trial court erroneously rejected the third party demand of defendant Furniture Company and its action in this respect must be set aside and judgment rendered herein in favor of said third party plaintiff.
*31 There remains for consideration only the question of quantum. The trial court awarded judgment against defendant Iowa in the sum of $590 representing the cost of repairs and $200 as damages for inconvenience suffered by plaintiff during the course of the renovation. Plaintiff having appealed the trial court's judgment urges an increase in the award of damages from $200 to $1,000.
The evidence shows plaintiff and his family moved out of the residence on three occasions during the course of the repairs and in each instance spent two or three days in the home of petitioner's mother some five miles distant. Necessary clothing and personal effects were moved back and forth via two automobiles which plaintiff owned, the only expense thereby incurred being the cost of operating the vehicles. Plaintiff was not required to pay for lodging in the home of his mother nor was it ever necessary for him to hire a vehicle of any sort to move his family and effects. Under such circumstances we feel the amount of $200 awarded plaintiff by the trial court is ample compensation for the inconvenience thus experienced.
For the reasons hereinabove assigned, it is ordered, adjudged and decreed the judgment of the trial court in favor of defendants H. B. Stewart d/b/a H. B. Stewart Plumbing and Heating Company and Baton Rouge Furniture Company, Inc., and against plaintiff Anthony Rotolo rejecting said plaintiff's demand and in favor of third party defendant H. B. Stewart d/b/a H. B. Stewart Plumbing and Heating Company and against third party plaintiff Baton Rouge Furniture Company, Inc., rejecting the demand of said third party plaintiff is reversed and amended and judgment rendered herein in favor of plaintiff Anthony Rotolo and against defendants H. B. Stewart d/b/a H. B. Stewart Plumbing and Heating Company, Baton Rouge Furniture Company, Inc., and Iowa Mutual Insurance Company, in solido, in the full sum of $790, together with legal interest thereon at the rate of 5% per annum from date of Judicial demand, until paid. All costs of these proceedings to be paid by defendants H. B. Stewart d/b/a H. B. Stewart Plumbing and Heating Company and Iowa Mutual Insurance Company.
It is further ordered, adjudged and decreed, judgment be rendered herein in favor of third party petitioner Baton Rouge Furniture Company, Inc., and against third party defendant H. B. Stewart d/b/a H. B. Stewart Plumbing and Heating Company and Iowa Mutual Insurance Company, in solido in the full amount hereinabove rendered against defendant Baton Rouge Furniture Company, Inc. and that, except as herein amended the judgment of the trial court is affirmed.
Amended and affirmed as amended.
HERGET, J., recused.