HOOD, Judge.
Plaintiff has sued to recover the balance due on a contract to dig a water well, or, alternatively, to recover on quantum meruit for work done. Defendant denies liability, and he has reconvened to recover the amount which he has paid to plaintiff, alleging that plaintiff breached the contract by failing to complete a well which would produce usable water. The trial court rendered judgment for plaintiff, awarding him the amount claimed and rejecting defendant’s reconventional demand. Defendant has appealed. We affirm.
The principal issue presented is whether the contract to drill a water well entered into between plaintiff and defendant included an implied guaranty that the well would produce fresh or potable water.
In August, 1967, Lacey L. Knight entered into an oral agreement with Joe Johnson, under the terms of which Knight was to re-open an existing well on Johnson’s land and drill it deeper in search of water-bearing sands. Johnson was receiving assistance from the Department of Public Welfare at that time, and the Department agreed to increase Johnson’s assistance by $23.00 per month until the cost of drilling the well was paid. A written bid or offer for performing the work was submitted to the Welfare Department by Knight, and a copy of it was furnished to Johnson.
The written bid submitted by Knight recited that for “pulling old well, running pipe & screen back to old depth, setting up on site to drill,” Knight would charge $100.00. For “drilling past existing depth” he was to receive $1.00 per foot for drilling, plus $.65 per foot for the cost of the pipe. And, finally, the bid provided that Knight was to receive the additional sum of $405.00 for the screen, pump, tank and other fittings, completely installed, and that the entire amount due may be paid out in monthly notes over ■ a two year period. There is nothing in the written bid submitted by Knight which can be construed as a guaranty or assurance that the completed well would produce sweet or usable water. Knight’s proposal was approved by the Department of Public Welfare, and Johnson thereupon entered into an oral agreement with Knight under the terms of which the latter was to perform the services called for in that bid, for the consideration therein recited.
At the time this contract was entered into there was a well on Johnson’s property which produced water from a depth of about 70 feet. Johnson was not satisfied with the water produced from that sand, because it was brackish, and he wanted to deepen the existing well in the hope that he would get better water. Pursuant to the above mentioned contract, Knight pulled the pipe out of the old well, and proceeded to drill in the same hole to a depth of 656 feet. The well was completed at that depth, but it produced salt water which was unfit for drinking purposes. Knight suggested, and Johnson agreed, that to drill deeper would be useless, because they felt that any water found beneath that level also would be salty.
Knight submitted a bill for $756.00, which included $100.00 for pulling the old well and $656.00 for drilling 656 feet at $1.00 per foot. The other charges shown on the original estimate were not included, because the pipe, screen, pump, tank and other items for which those charges were made were not used on this job.
The Welfare Department paid Johnson the $23.00 per month supplement for nine *634 months, and Johnson in turn made similar payments to Knight, who acknowledges that he has received the aggregate sum of $207.00 from Johnson. After the ninth month, the Welfare Department discontinued paying this supplement, and Johnson thereafter discontinued making payments to Knight. Knight then filed this suit demanding judgment for the $549.00 balance claimed to be due on the contract.
After the above mentioned well had been completed with unsatisfactory results, Knight entered into another water well contract with Johnson, and pursuant to that agreement he drilled a second well for him to the same sand as that of the original well, or to a depth of about 70 feet deep, and Johnson has been using water from that well since that time. This subsequent well was paid for by Johnson, and no issues are raised in this suit relating to that well.
Defendant concedes that he entered into a contract with Knight to drill the well which is at issue here. He also admits that plaintiff did not specifically agree or guarantee that the well would produce good water, and that he did not even ask Knight for such a guaranty. He contends, however, that there was an “implied guaranty” that the well would produce usable water, and that plaintiff breached the agreement by failing to complete a well which would produce good water. Johnson takes the position that in view of this breach of contract he is not indebted to Knight for any amount, and that instead he is entitled to recover from Knight the sum of $207.00 which has been paid to him.
The trial judge found that the contract entered into between the parties did not include a guaranty, either express or implied, that good water would be produced from the well which was drilled by Knight, and that defendant is indebted to Knight for the balance due under the drilling contract. Judgment thus was rendered in favor of plaintiff, awarding him the sum of $549.00 and rejecting defendant’s reconventional demand. We have concluded that the judgment rendered by the trial court is correct.
There is no dispute as to the facts. Knight did not expressly guarantee that the well he drilled for defendant would produce good water. Both parties knew that the water in that area was brackish, and both obviously were uncertain as to whether a good well could be produced from deeper sands. Knight testified that the screen, pump and other fittings listed in the bid were to be supplied by him only “if he hit water,” which indicates that there was some uncertainty as to whether they would find water at all. Johnson stated that he didn’t know how much would have to be paid for the first well, because they did not know how deep Knight would have to drill to find water. The amount which Knight charged per foot for drilling the well was very low, and he was aware of the fact that he would make little, if any, profit on the job. His testimony is reasonable, therefore, that he did not intend to gamble or risk the earning of such a small profit against the loss of such a large sum, conditioned on the completion of a fresh water well in that doubtful area.
Wesley Martin, who has been engaged in drilling water wells in that area for about 29 years, stated that there is a fault line near the Johnson property, that “you are stricking your neck out when you dig one there,” that “you are just going to have to be sure that you get your money, whether you get a well or not,” and that Martin would not guarantee that he could locate sweet water below the first sand in that area. Knight has been engaged in drilling water wells in the same area about 18 years, and he also is thoroughly familiar with the difficulties encountered there in locating fresh water. It is understandable that he had the same reluctance as did Martin to drill a water well in that area, with a guaranty that good water would be produced.
*635 We attach some significance to the fact that Johnson made monthly payments to plaintiff under the well drilling contract for nine months following the unsuccessful completion of this well, and that immediately thereafter Johnson engaged plaintiff to drill another well for him, and he paid plaintiff in full for drilling the second well. Johnson did not cease making payments to plaintiff until the Welfare Department discontinued the supplementary payments it had been making. It appears, therefore, that for at least nine months after the first drilling contract was completed Johnson felt that plaintiff had performed the duties required of him under that contract, and that he had no hesitancy in entering into another similar contract with plaintiff. It was only when the Welfare Department reduced the payments which it had been making that Johnson took the position that there had been a breach of the well drilling contract.
The issue presented here is substantially the same as that presented in Rinaudo v. Treadwell, 212 La. 510, 32 So.2d 907 (1947). There, plaintiff sought to recover from his building contractor the expense of having to drill extra wells when the well drilled by a subcontractor failed to produce potable water. It was known by both parties to the contract that a well in the vicinity was apt to produce brackish or salty water. In denying this claim, our Supreme Court said:
“ * * * Inasmuch as the plaintiff was a party to the acceptance of For-song’s bid, knowing that it carried no guarantee of producing suitable water, and knowing that the result was apt to be unsatisfactory, our conclusion is that he is not entitled to be compensated for the loss or cost resulting from the acceptance of the Forsong bid.”
We think the rule applied in that case should be applied here.
Defendant relies substantially on the cases of Weldon v. Crooks, 24 So.2d 479 (La.App. 2 Cir. 1946); Spillman v. Dunn, 105 So.2d 288 (La.App. 1 Cir. 1958); and Robichaux v. Northeast Louisiana Pentecostal Camp Association, 69 So.2d 564 (La.App. 2 Cir. 1953). We distinguish each of these cases. In the Weldon and Spillman cases, unlike the instant suit, the court found that the contractors had expressly guaranteed that the wells would produce good water. In Robichaux there was a written contract expressly providing that a lesser consideration was to be paid to the contractor in the event water was not obtained. The question presented was whether the well was successfully completed within the meaning of the contract. The court determined that it was not, and it awarded plaintiff the consideration specifically provided in the agreement in the event of a dry hole.
Our conclusion with reference to the contract involved in the instant suit is that there was no guarantee by Knight, either express or implied, that good water would be obtained from the drilling of the first well. The trial judge correctly held, therefore, that plaintiff is entitled to recover the balance due under the contract, and that there is no merit to defendant’s re-conventional demand.
The judgment appealed from is affirmed. The costs of this appeal are assessed to defendant-appellant.
Affirmed.