302 So.2d 335 (1974)
Mrs. Beverly Wright PEAK
v.
John D. CANTEY and J. Daniel Beszborn, d/b/a Beszborn, Ltd.
No. 9929.
Court of Appeal of Louisiana, First Circuit.
October 14, 1974.
*337 Anthony J. Clesi, Jr., Baton Rouge, for plaintiff-appellee-appellant.
William Luther Wilson, Baton Rouge, for defendant-appellant-Cantey.
Jack P. F. Gremillion, Jr., Baton Rouge, for defendant-Beszborn, Ltd.
Before LANDRY, BLANCHE and NEHRBASS, JJ.
NEHRBASS, Judge.
This is a suit seeking compensation for alleged negligent damage to plaintiff's property arising out of the execution of two contracts for renovation of plaintiff's home. Named as defendants in the original petition were John D. Cantey, a building contractor, and J. Daniel Beszborn, an ornamental iron worker, doing business as Beszborn, Ltd. Plaintiff subsequently amended her petition to include as a defendant Beszborn, Ltd., a Louisiana corporation. Defendant Cantey answered the suit naming J. Daniel Beszborn as a third party defendant. Mr. J. Daniel Beszborn, having been discharged in bankruptcy, was dismissed from this suit prior to its being submitted for decision.
The trial court rendered judgment in favor of the plaintiff against the defendant, Cantey. Plaintiff's suit as to defendant Beszborn, Ltd. was dismissed, the trial court finding no negligence in this defendant. Defendant Cantey has appealed the judgment against it in the sum of $1,902.48, which appeal has been answered by plaintiff who seeks an increase in the award received against said defendant. Plaintiff has appealed the judgment rejecting her claims against Beszborn, Ltd., which appeal has not been answered.
Prior to December 1, 1970, plaintiff, Beverly Wright Peak, desiring to remodel her home orally contracted with defendant, John D. Cantey, a building contractor, for the performance of certain carpentry work. As part of this remodeling job Cantey was to remodel the kitchen in this home and was to and did construct a ventilation hood above an island stove.
Sometime before December 1, 1970, and after defendant Cantey had constructed and installed the ventilation hood and its enclosure, plaintiff, Beverly Peak, contracted with Beszborn, Ltd., through J. Daniel Beszborn, for the fabrication of an installation of a decorative ornamental iron "butcher's rack" or "baker's rack" to be used for the purpose of hanging various cooking pots and pans, thus, enhancing the beauty of her kitchen. This cookware rack was designed and fabricated by Beszborn, Ltd. and was installed by them by securing the rack to the wooden ventilation hood enclosure which had been constructed by Defendant Cantey.
On or about December 1, 1970, the ventilation hood and its wooden enclosure, together with the cookware rack and the cookware hanging thereon, became detached from the ceiling and crashed down upon the island stove, striking counter tops and other objects and causing the damages for which plaintiff seeks relief.
We have before us issues as to the negligence of defendants Cantey and Beszborn, Ltd., as well as an issue as to the quantum of damages awarded. Plaintiff alleges that Beszborn, Ltd. was negligent in improperly installing the cookware rack and that defendant, John D. Cantey, was negligent in failing to provide adequate support *338 for the metal rack and in failing to properly supervise the installation of the rack.
Mrs. Peak desired an island stove which necessitated the installation of a ventilation hood in the center of the kitchen. The ceilings in this home are approximately ten feet in height; therefore, to place the hood at a reasonable height above the stove it was necessary to construct a box-like structure which was to be suspended from the ceiling and to which the ventilation hood would be attached and through which the vent pipe was to pass. There were no plans or specifications for this hood and Mr. Cantey drew a crude sketch of this devise to show the plaintiff what it would look like.
The ventilation hood enclosure was constructed of two inch by four inch frame which was covered with birch plywood. The box measured twelve inches wide, thirty-six inches long, and thirty inches in height. It was subsequently learned, and the testimony is conflicting, that this box was secured to the ceiling by four to six nails and that these nails had been driven vertically through the two inch by four inch box frame, through the ceiling plaster and into the ceiling joist or furring strips. Consequently, the hood enclosure was held to the ceiling by the friction force required to pull the nails rather than the force required to shear the nails. The entire weight of the hood and its enclosure was estimated by defendant Cantey to weigh approximately fifty pounds, and by the defendant, Daniel Beszborn, to be one hundred pounds. Witness, Robert L. Beszborn, estimated the weight of the hood enclosure as being between thirty and forty pounds.
Mr. Beszborn testified that the ventilation hood and its enclosure were completely installed at the time of his first visit and that the wooden hood enclosure had been completely finished by painting. He also testified that the kitchen renovation was virtually completed with the exception of the installation of carpeting and some finish painting remaining to be done. Mrs. Peak later contracted with another firm for the installation of carpet for which she was billed on September 2, 1970. (Plaintiff's exhibit P-3)
J. Daniel Beszborn designed, fabricated and installed the cookware rack by securing it to the wooden ventilation hood enclosure. The cookware rack weighed between 150 and 160 pounds and the cookware itself weighed approximately another 150 pounds. Consequently, the hood enclosure would have to support its own weight and an additional weight of 300 pounds.
It is uncontested and the record reveals that the renovation of plaintiff's home was completed at the time of the December 1, 1970 failure which forms the basis of this suit. Mr. Beszborn testified that the carpentry work in the kitchen area was completed at the time of his initial visit to the residence. There is no doubt that defendant Cantey's contract was completed prior to the installation of the cookware rack. Mr. Beszborn testified that on his initial visit, the carpeting in the kitchen had not been installed and further testified that he installed the cookware rack two to four weeks after his initial visit. From plaintiff's exhibits it is noted that the kitchen carpeting was installed prior to September 2, 1970. Consequently, we can only conclude that the hood and its enclosure were installed and serving their purpose for several weeks prior to the installation of the cookware rack, and further, that after installation of the cookware rack, the hood, its enclosure and the cookware rack itself remained in place for numerous weeks prior to the December 1, 1970 failure.
The work having been completed, plaintiff should recover from defendants only if she shows that failure was on account of badness of workmanship or the use of defective materials. Brasher v. City of Alexandria, 215 La. 887, 41 So.2d 819 *339 (1949); Parker v. Brown, 150 So.2d 306 (La.App. 2d Cir. 1963); Draube v. Rieth, 114 So.2d 879 (La.App. 4th Cir. 1959); see: Lebreton v. Brown, 260 So.2d 767 (La.App. 4th Cir. 1972), affirmed 277 So.2d 645 (La.S.Ct.1973); LSA C.C. Art. 2762.
It is undisputed that defendant Cantey was never informed by anyone that the cookware rack would be attached to the hood enclosure fabricated and installed by him. Being unaware of the cookware rack prior to construction and installation of the hood enclosure, defendant Cantey had no duty to design and construct the hood enclosure to receive the cookware rack. Certainly, Cantey had no duty to anticipate that a weight of three hundred pounds would be attached to the hood enclosure. Under the circumstances, defendant Cantey's duty was to design a hood enclosure suitable for the purposes of which he was aware and to see that it was safely and properly installed. See: Rotolo v. Stewart, 127 So.2d 24 (La.App. 1st Cir. 1961). This he did, Cantey also testified that had he known the cookware rack was to be installed, he would have personally seen to it that the hood enclosure was sturdy enough to withstand the additional load.
Plaintiff has presented no proof that Cantey was guilty of poor workmanship or that the materials furnished by him were defective. There is no proof that the hood enclosure was not suited for its purpose. The evidence reveals that the hood enclosure was attached to the ceiling by four to six nails, but there is no evidence from which we can infer that the hood enclosure was not suitable for the purpose intended at the time of its fabrication and installation. As a matter of fact, a different conclusion can be reached, for the evidence discloses that the hood was installed several weeks before the additional weight was attached to the hood enclosure and that failure did not occur until numerous weeks thereafter. Accordingly, we hold that defendant, Cantey, breached no duty owed the plaintiff.
Mr. J. Daniel Beszborn apparently planned from the start to attach the cookware rack to the ventilation hood enclosure and was properly concerned about the capacity of the wooden enclosure to support the combined weight of the rack and the cookware suspended therefrom. He testified that on his first visit to the plaintiff's home he spoke to a black carpenter about the construction of the hood enclosure and was told that it was scabbed to the ceiling joist, that is, the support nails were subjected to shearing force, and would support any weight that he wanted to suspend from the enclosure. There is some question as to the identity of the carpenter to whom Mr. Beszborn spoke. Mr. Beszborn identifies the carpenter as an employee of Mr. Cantey. This is denied by Cantey who testified he did not have any black carpenters working on this job.
Apparently, J. Daniel Beszborn and his father, Robert L. Beszborn, were not satisfied with the competency of the assurance by the black carpenter for Daniel Beszborn returned to the residence, at his father's insistance, to determine if in fact the hood enclosure was strong enough to support the proposed rack; however, when he arrived there were no carpenters on the job. Under the circumstances, we believe that Beszborn, Ltd. owed plaintiff a duty to determine if the hood enclosure was capable of supporting the combined weight of the cookware rack and cookware. Not finding any carpenters present, defendant Beszborn should have telephoned defendant Cantey or should have inspected the hood enclosure from the attic space to independently determine if the box was scabbed to the ceiling joist. This Beszborn did not do; if it had, this unfortunate accident would not have happened.
A contractor is bound to warrant his work and is responsible for damages *340 occasioned by defective workmanship or installation. Rotolo v. Stewart, 127 So.2d 24 (La.App. 1st Cir. 1961). Under the circumstance, we do not believe that defendant Beszborn, Ltd. could properly rely upon the outward appearance of solidity. Its agents should have done more to determine the competency of the hood enclosure. Additionally, with a little extra effort the cookware rack could have been secured to the ceiling joist. In short, we find that the failure was due to poor workmanship on the part of Beszborn, Ltd. The corporation's agents were negligent in their failure to perform in a skillful and workmanlike manner. Accordingly, the judgment of the trial court as to Beszborn, Ltd. is reversed and judgment is entered in favor of the plaintiff and against Beszborn, Ltd.
We next consider the quantum of damages awarded. The trial court awarded plaintiff $1,902.48.
In awarding property damages to a party who has been injured through the legal fault of another, the primary objective is to restore the injured party in as near a fashion as possible to the state in existence at the time immediately preceding the injury. Roshong v. Travelers Insurance Company, 281 So.2d 785 (La.App. 3rd Cir. 1973). Several tests have been formulated in order to realize this goal. In Granger v. Bouillion, 220 So.2d 764 (La.App. 1st Cir. 1969), it was recognized that three tests have been utilized in determining damages. The first is the cost of restoration, if the thing damaged can be adequately repaired. The second is the difference in the value prior to the damage and the value following the damage. The third is if the value before and after the damage cannot be reasonably determined or if the cost of repair exceeds the value of the thing damaged, the measure of damages to the owner has been the cost of replacement new, less reasonable depreciation.
In awarding damages the trial court in its written reasons for judgment made the following awards:

Cooktop $ 95.74
Hood 209.88
Lock 31.90
T. V. Repairs 23.75
Repairs to Kitchen 643.53
Damage to rug 648.68

We have reviewed the evidence and find that the awards made by the trial court for the foregoing items were amply supported by the evidence and meet the test set forth above and we accordingly affirm these awards.
The trial court disallowed damages for the cookware rack claimed by the plaintiff. The plaintiff testified that the rack was slightly bent and it appeared that the rack could be repaired or modified and be used again. Plaintiff testified as to the original cost but presented no evidence as to the cost of repair or modification. Under the circumstance we affirm the trial judge in disallowing this claim as not being proven to the extent required by law.
The trial court disallowed the plaintiff's claim of $231.00 representing the value of four (4) pots which were damaged beyond repair. Mrs. Peak testified that this amount represented the value of the four (4) pots which testimony was corroborated by one of the owners of the establishment where these pots were purchased. We will reverse the trial judge on this item and allow her the sum of $231.00 for this item.
There is some evidence of damage to formica table tops. Plaintiff presented evidence of material and labor costs for repair to her kitchen amounting to $643.53. Additionally, defendant Cantey testified under cross-examination that it would cost $97.00 to repair the formica table tops. The trial court assumed that the repair to the formica table tops was included in the *341 above quoted larger sum. We believe that the plaintiff sufficiently established the separateness of these items and believe that the plaintiff should be awarded an additional $97.00.
Plaintiff was awarded $250.00 for mental pain, suffering and inconvenience and seeks to have the award increased to the sum of $1,000.00 to bring the award in line with similar cases. The trial judge or jury is given much discretion in fixing quantum, and it is not our function to disturb these awards simply to achieve uniformity. We may only look to similar cases as guides in determining whether the much discretion vested in the lower court has been abused. York v. Sedotal, 281 So.2d 170 (La.App. 4th Cir. 1973). A review of the facts of this case and the jurisprudence convinces us that there is no abuse of discretion here.
For the foregoing reasons, the judgment rendered in favor of plaintiff, Beverly Wright Peak, against defendant, John D. Cantey, is reversed and set aside, and judgment rendered herein in favor of defendant, Cantey, dismissing the claim of plaintiff, Beverly Wright Peak, against him, with prejudice. The judgment of the trial court rejecting the demands of plaintiff, Beverly Wright Peak, against defendant, Beszborn, Ltd., is reversed and set aside, and judgment rendered herein in favor of plaintiff, Beverly Wright Peak against defendant, Beszborn, Ltd., in the sum of $2,230.48 together with legal interest thereon from date of judicial demand, until paid; defendant, Beszborn, Ltd., to pay all costs of these proceedings. Judgment is also rendered herein affirming the judgment of the trial court rejecting the third party demands of third party plaintiff, John D. Cantey, against third party defendant, Beszborn, Ltd.
Affirmed in part, reversed in part, and rendered.